# STATE OF MICHIGAN

# COURT OF APPEALS

ESTRELLITA AGUILAR, also known as
ESTRELLITA STROBLE,

        Plaintiff-Appellee,

v

GILBERTO AGUILAR,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2017

No. 331514
Wayne Circuit Court
LC No. 07-702305-DM

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

Defendant appeals the trial court's order that granted plaintiff's post-divorce motion to relocate the domicile of their two children, PA and GA, from Michigan to Texas. For the reasons provided below, we affirm.

On appeal, defendant argues that the trial court abused its discretion when it found that (1) plaintiff had supported her motion to change the children's domicile by a preponderance of the evidence and (2) a change in the children's established custodial environment was, by clear and convincing evidence, in the best interests of the children.

> We review a decision on a petition to change the domicile of a minor child for an abuse of discretion. *Brown v Loveman*, 260 Mich App 576, 600; 680 NW2d 432 (2004). We review the trial court's findings in applying the MCL 722.31 factors under the great weight of the evidence standard. *Id.* "Under this standard, we may not substitute our judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *McKimmy v Melling*, 291 Mich App 577, 581; 805 NW2d 615 (2011). [*Gagnon v Glowacki*, 295 Mich App 557, 565; 815 NW2d 141 (2012).]

MCL 722.31(1) prohibits "a parent of a child whose custody is governed by court order [from changing] a legal residence of the child to a location that is more than 100 miles from the child's residence at the time of the commencement of the action in which the order is issued." However, a parent wishing to move a child to a location outside the prescribed range of MCL 722.31(1) may seek the court's permission to change the child's domicile. When considering such a request, a court must consider the following factors:

-1-

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child. [MCL 722.31(4).]

Additionally, the evaluation of these factors is accomplished "with the child as the primary focus in the court's deliberation." MCL 722.31(4). And "[t]he party requesting the change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted." *McKimmy*, 291 Mich App at 582.

## I. THE MCL 722.31(4) FACTORS

The trial court's finding that the factors in MCL 722.31(4) supported plaintiff's motion to relocate the children's domicile to Texas was not against the great weight of evidence.

## A. FACTOR (A)

With regard to factor (a), "[w]hether the legal residence change has the capacity to improve the quality of life for both the children and the relocating parent," MCL 722.31(4)(a), the trial court stated:

Plaintiff desires to move to Texas to relocate with her husband, their child together, his daughter, and the 2 children she shares with defendant. Plaintiff has no real job skills and her husband is the primary source of income. While defendant pays child support, he was only ordered to do so recently and is in arrears. Plaintiff's move is precipitated by her husband's recent unemployment and his new hire at a job in Texas. This job will allow him to support plaintiff and his family. This change has the capacity to improve both plaintiff's life and the children [sic]."

-2-

The trial court's findings were not against the great weight of the evidence. Plaintiff's new husband, Clint, testified that his new income in Texas would be nearly $175,000 a year. Based on the cost of living in Texas, this amount is sufficient to support his family of six in an appropriate living environment. It is also significantly higher than Clint's potential income in Michigan, as Clint had been unable to secure employment within this state for several months.

Although defendant concedes that the move from Michigan to Texas will improve the quality of life for plaintiff, he argues that no evidence was presented to show that the move would improve the children's quality of life. However, "[i]t is well established that the relocating parent's increased earning potential may improve a child's quality of life." *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007). Here, as already noted, it was clearly established that the children's household income would be greatly increased with the move to Texas. Thus, the court's finding is not against the great weight of evidence.

Defendant also asserts that the trial court erred when it failed to consider the intended living arrangements of the children, which defendant alleges involve six people sharing a one-bedroom apartment. Defendant mischaracterizes the testimony of Clint, who clearly explained that while he was currently renting a one-bedroom apartment, he intended to purchase a four- to five-bedroom home in the area when he was sure that his family could join him in Texas. Indeed, Clint and plaintiff both testified that they had already located several houses within their price range and chosen area. Defendant also mischaracterizes the testimony regarding the children's intended education when he argues that the trial court could not assess the children's potential quality of life without knowing precisely where the children would go to school. Contrary to defendant's assertion, plaintiff testified at the hearing that she planned to send both of the children to public schools in Frisco, Texas, which she had learned are very highly rated.

Consequently, the significant change in the family's income, along with other factors such as the preservation of a family unit, is enough to support, by a preponderance of the evidence, the conclusion that the move to Texas has the capacity to improve the quality of the children's lives. Therefore, the trial court did not err when it so determined.

## B. FACTOR (B)

Factor (b) considers "[t]he degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule." MCL 722.31(4)(b). For this factor, the trial court essentially found that the factor did not weigh in either party's favor and stated:

> Both parents are in substantial compliance with the current parenting time order. While there have been occasional problems, the vast majority of time has been honored by both parents. This [c]ourt finds that plaintiff's request to change domicile is not inspired by a desire to defeat defendant's parenting time but by an effort to deal with a difficult situation; to-wit: her husband's relocation because of a job change.

-3-

Although defendant does not specifically challenge the trial court's findings with respect to this factor, we note that the trial court's findings are also supported by the evidence.

## C. FACTOR (C)

Factor (c) weighs "[t]he degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification." MCL 722.31(4)(c). Regarding this factor, the trial court stated:

> Although the [c]ourt finds that it may not be possible to have the same number of overnights, it would be possible to modify the schedule to provide an adequate basis to preserve and foster defendant's parental relationship with his children. Contrary to defendant's assertions, this [c]ourt finds no reason to believe plaintiff would thwart defendant's parenting time. Although her husband moved to Texas in early 2015, plaintiff has patiently relied on the legal process to request her change of domicile. She has shown absolutely no inclination to fail to follow court orders.

Again, these findings are not against the great weight of the evidence. There was little evidence presented to support defendant's assertion that plaintiff had deprived defendant of parenting time. Additionally, defendant admitted that, despite the parties' difficulty with communication and a prior PPO against defendant for sending vulgar text messages, plaintiff had reached out and attempted to talk to defendant about the move to Texas before she filed her motion for a change of domicile. While Clint had already relocated to Texas, plaintiff waited in Michigan with her children and relied on the legal process and testified that she would, in fact, remain in Michigan with the children if that is what the court ultimately decided. Therefore, the trial court's conclusion that plaintiff was likely to comply with a new parenting time order was not against the great weight of the evidence.

Defendant claims that plaintiff could not find support in subsection (c) because no adequate parenting time schedule can "provide a realistic opportunity to preserve and foster the parental relationship previously enjoyed" by defendant, "who is a 50/50 parent, who exercises his parenting time, and who is actively involved in all phases of the children's lives." While defendant's parenting time was reduced in order to accommodate the children's move, the inquiry under factor (c) is not whether the new parenting schedule is equivalent to the old schedule; rather, it is "whether the proposed parenting-time schedule provides 'a realistic opportunity to preserve and foster the parental relationship previously enjoyed' by the nonrelocating parent." *McKimmy*, 291 Mich App at 584 (citation omitted). While defendant's parenting time is no longer equivalent, he still has a realistic opportunity to preserve and foster a relationship through parenting time during summer, winter, and spring breaks, as well as whenever he chooses to visit his family in Texas, and he has not been limited in his ability to communicate with the children through other means. While face-to-face communication might be preferable, defendant can still be a constant presence in his children's lives through email,

webcam, text messages, and telephone conversations. Thus, the trial court's factual findings with respect to this factor were not against the great weight of the evidence.

## D. FACTORS (D) AND (E)

The trial court did not find that factors (d) and (e) were applicable, and defendant does not claim otherwise. Moreover, we do not find that these findings were against the great weight of evidence.

## E. CONSIDERATION OF ALL FACTORS

The trial court carefully considered the evidence presented at the evidentiary hearing and reported its factual findings with respect to each individual factor and concluded that "by a preponderance of the evidence[,] a change of domicile must be considered." The court's ultimate finding also is not against the great weight of evidence. The capacity to improve the lives of the children was not outweighed by any negative ramifications associated with the move.

## II. ESTABLISHED CUSTODIAL ENVIRONMENT

After determining that the factors in MCL 722.31(4) support a change in domicile, "the trial court must then determine whether an established custodial environment exists." *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013). And "if an established custodial environment does exist, "the trial court must then determine whether the change of domicile would modify or alter that established custodial environment." *Id.* If the trial court finds that a change of domicile would modify or alter the child's established custodial environment, then the court must "determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence." *Id.*

Here, the trial court found that an established custodial environment existed with both parents, and that the move to Texas would affect that established custodial environment. Defendant does not contest this finding, and we find that it is not against the great weight of evidence. Defendant, however, argues that the trial court erred when it found that clear and convincing evidence showed that the move would be in the children's best interests.

## III. BEST INTERESTS OF THE CHILDREN

To determine whether a change in established custodial environment is in the best interests of a child, the trial court must review the statutory factors of MCL 722.23. *Id.* The best interest factors listed in MCL 722.23 are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnesses by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

"These findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). This Court defers to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors. *Sinicropi v Mazurek*, 273 Mich App 149, 155, 184; 729 NW2d 256 (2006).

The trial court considered each best-interest factor individually and factually supported its conclusions on each in its written opinion. Although defendant agrees that the trial court properly found that seven of the best-interest factors were neutral, he argues that the trial court's findings with respect to factors (c), (e), (h), (j), and (k), which favored plaintiff, were erroneous.

## A. FACTOR (C)—CAPACITY OF THE PARTIES TO PROVIDE FOR THE CHILDREN'S NEEDS

The trial court's conclusion that factor (c), "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs,"

MCL 722.23, weighed "slightly" in plaintiff's favor was not against the great weight of the evidence. The trial court stated:

> While both parties have the capacity and disposition to provide the children with the above, plaintiff's husband has carried the children on his medical insurance for years relieving defendant from the need to contribute. In addition no child support order was in place until recently. At that time, the [c]ourt was advised defendant makes substantially more money than plaintiff. A child support order was entered and defendant is in arrears.

Defendant avers that the trial court erroneously relied on the assumption that plaintiff's husband provided the children's health insurance, an assumption defendant argues is unsupported by the record, and that otherwise, factor (c) was neutral. Defendant is correct that the record is void of any indication that Clint has carried the children on his health insurance "for years," although Clint testified that they were covered by his benefits once he became employed at his new job in Texas. Indeed, the only mention of prior insurance coverage at the evidentiary hearing was during defendant's testimony, when he explained that the children were covered under his benefits. Thus, this particular finding of the trial court was unsupported. However, defendant fails to consider the trial court's additional factual support for its conclusion on factor (c)—that although "no child support order was in place until recently," defendant is in arrears.

Thus, while the trial court erroneously relied, in part, on the fact that plaintiff's husband provided medical insurance for the children, defendant incorrectly argues that without this fact, the trial court would have found this factor to be neutral. The trial court also relied on the fact that defendant, who made "substantially" more than plaintiff, had not been asked to pay any child support for the first seven years after the parties' divorce and, more importantly, that when defendant was eventually ordered to pay child support, he failed to make timely payments pursuant to that order. The record contains the consent judgment of divorce, which did not provide for child support, plaintiff's 2014 motion for child support, and the initial support order that directed defendant to make monthly payments to plaintiff. At the evidentiary hearing, defendant admitted that he was working to pay off an existing arrearage, although he denied that he was "behind" in his child support obligations. The most recent support order directs defendant to pay $200 per month to plaintiff "until arrears are paid off." Therefore, we hold that the trial court's ultimate finding that this factor slightly favors plaintiff is not against the great weight of evidence.

## B. FACTOR (E)—THE PERMANENCE, AS A FAMILY UNIT, OF THE EXISTING OR PROPOSED CUSTODIAL HOME

The trial court's conclusion that factor (e) favored plaintiff was not against the great weight of the evidence. Factor (e) "exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other." *Ireland v Smith*, 451 Mich 457, 462; 547 NW2d 686 (1996). With regard to its conclusion on this factor, the trial court found that this factor favored plaintiff and explained that plaintiff's household consists of six individuals: plaintiff, Clint, PA, GA, a girl from Clint's prior marriage (PS), and a toddler from the marriage of plaintiff and Clint (CS). The court also noted that "Plaintiff is a stay at home mom. [GA] particularly is close to her [PS]. Both [PA]

and [GA] enjoy having their mother home." When considering defendant's household, the court noted that "Defendant's home consists of his fiancé, his adult daughter, and [PA] and [GA]. All 3 adults work fulltime and [PA] and [GA] are home alone on a regular basis."

Contrary to defendant's assertion on appeal, the trial court's reliance on the fact that the children were frequently left alone at his house was neither factually unsupported nor legally inappropriate. Defendant, Brown, and defendant's adult daughter, Ruby Aguilar, all testified that PA and GA spent time unsupervised at defendant's home while the three adults were at work, although rarely for more than an hour at a time. Additionally, defendant admitted that he worked long hours at the gym and his children spent time completing homework assignments with Brown and Ruby. In contrast, plaintiff, a stay-at-home mother, was home and available for the children at virtually all times. While the difference here might not be dispositive, it is certainly relevant to the trial court's consideration of the children's best interests. Defendant also argues that this factor could not favor plaintiff because plaintiff and her husband had not yet purchased a home in Texas. However, as we noted previously, plaintiff and her husband both testified that they planned to purchase a suitable home in the location of their choice. It does not weigh against them that they did not purchase a home in another state before they determined that the children would be able to move with them.

On the evidence presented, we cannot say that the trial court's finding that this factor favored plaintiff was against the great weight of evidence. It is worth noting that the change in domicile allowed PA and GA to maintain a close relationship with their toddler half-brother, CS, and Clint's daughter from a previous marriage, PS. Although they also had a relationship with Ruby, defendant's 20-year-old daughter who is also their half-sister, this relationship is distinguishable by a significant age difference and the fact that Ruby is currently working part-time and attending college. It would be reasonable to assume that, with Ruby entering adulthood, the children's time with her would be limited, while their time with CS and PS, who is the same age as GA and is GA's best friend, would last throughout the children's more formative years and would be particularly beneficial for PA and GA.

C. FACTOR (H)—THE HOME, SCHOOL, AND COMMUNITY RECORD OF THE CHILD

The trial court's conclusion that factor (h) favored plaintiff was not against the great weight of the evidence. The trial court considered the children's educational records, including PA's increased need for academic support. It noted that defendant had allegedly refused to get extra help for PA, and "failed to provide the children with an adequate computer for their school work." The trial court also considered the children's participation in extracurricular activities and explained:

> Defendant placed a huge emphasis on his involvement in [GA]'s softball at the hearing. The [c]ourt does not question his involvement in this activity, as both a parent and a coach. Defendant called [GA]'s team coach and pitching coach to testify. Considering the fact that even defendant admits that GA has told him she is not interested in continuing to play softball it is not clear to the [c]ourt what defendant hoped to gain by calling these witnesses. The [c]ourt's conclusion is that softball is much more important to defendant than it is to [GA] and that he is

having trouble accepting this. [GA] is involved in several other activities that defendant is only marginally involved in . . . .

Based primarily on defendant's refusal to provide [PA] with formal tutoring and defendant['s] refusal to acknowledge [GA]'s waning interest in softball, the [c]ourt finds Factor H in favor of plaintiff.

Defendant argues that the trial court's findings with regard to this factor were against the great weight of the evidence because, based on the evidence presented, no one could conclude that defendant was less active than plaintiff in the children's academic or extracurricular activities. We disagree. Plaintiff testified that she attended almost every one of her children's extracurricular events, including GA's theatre plays, choir concerts, and award ceremonies, and PA's track and cross-country meets. She discussed several of both children's academic assignments in detail. Defendant, on the other hand, seemed to be intimately involved only with GA's softball-related activities, which the trial court accurately noted GA was less interested in than her father. Defendant could not recall any specific school assignments his children had worked on. Although he said that he had attended one of GA's plays, he could not recall what it had been about. He also admitted that he had only been to a few of PA's cross-country meets and had never been to a track meet. Plaintiff also testified that PA and GA would often return to her home after defendant's parenting time with unfinished homework because defendant failed to provide a computer for them to work with. Although defendant said that neither of his children nor any of their teachers had told him that a computer would be necessary for the completion of schoolwork, it is unlikely that, in the current technology-focused atmosphere, defendant did not know that he would need a computer and an Internet connection to facilitate his children's education. The fact that he was unaware, especially in light of plaintiff's testimony that the children frequently needed a computer, indicates that defendant was not as involved with the children's academics as he claims. The trial court's conclusion that plaintiff was more actively involved in the children's lives was not against the great weight of the evidence.

Defendant also argues that the evidence showed that plaintiff actually denied GA an academic benefit when she refused to take GA to before-school tutoring sessions. However, defendant's argument here is based only on unsupported allegations that he made during the evidentiary hearing. Plaintiff made similar allegations, testifying at the hearing that defendant refused extra academic support for PA. It was the trial court judge's prerogative to credit plaintiff's testimony over defendant's, and this Court does not revisit the trial court's credibility determinations. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Again, the evidence presented did not clearly preponderate against the trial court's conclusions, and this Court defers to the trial court's judgment in this regard.

## D. FACTOR (J)—THE WILLINGNESS AND ABILITY OF EACH OF THE PARTIES TO FACILITATE AND ENCOURAGE A CLOSE AND CONTINUING PARENT-CHILD RELATIONSHIP BETWEEN THE CHILD AND THE OTHER PARENT

The trial court's conclusion that factor (j) favored plaintiff was not against the great weight of the evidence. With regard to its conclusion on this factor, the trial court again noted that, although defendant argued that plaintiff was unlikely to honor any parenting-time agreement, plaintiff had complied with all previous orders and that there is no evidence to

support defendant's allegations of future noncompliance. Additionally, the court noted the following:

> No support order was put in place [after the parties' divorce] until plaintiff's motion in 2014. The facts show that defendant earns substantially more than plaintiff. Even then, defendant refused to agree to child support and this [c]ourt had to order it. Plaintiff also had to file previously to force defendant to pay his share of the uninsured medical bills. Plaintiff had to file a motion to get defendant to allow her to get the children's passport for a family trip. And defendant filed a motion to force a change of school from the school they were attending to be closer to him . . . . Contrary to defendant's assertion, he strikes the [c]ourt as being the parent who has refused to compromise in the past.

With regard to this factor, defendant argues simply that there was no evidence to suggest that plaintiff has a greater willingness or ability to facilitate a close relationship between the children and defendant. We disagree. The trial court properly considered the parties' record history, which does contain a heavily contested motion for child support filed seven years after the parties' divorce, an order directing defendant to provide plaintiff with the children's passports and birth certificates, and a motion from defendant to change the children's schools. Where there is record evidence of one parent's unwillingness to facilitate or encourage a close relationship with the children and the other parent, it is proper for the trial court to find this factor in favor of the cooperative parent. See *McIntosh v McIntosh*, 282 Mich App 471, 481; 768 NW2d 325 (2009). Additionally, defendant testified at the evidentiary hearing that plaintiff had attempted to discuss the impending move to Texas and reach some sort of compromise, and he refused. Defendant offered no evidence to suggest that plaintiff was unwilling to communicate or compromise. Accordingly, the trial court's finding with respect to this factor is not against the great weight of the evidence.

### E. FACTOR (K)—DOMESTIC VIOLENCE

The trial court's conclusion that factor (k) favored plaintiff "slightly" was not against the great weight of the evidence. With regard to its conclusion on this factor, the trial court explained:

> No evidence of domestic violence was introduced but the plaintiff previously had a Personal Protection Order against defendant in 2007. This Personal Protection Order was not challenged by defendant nor was there a request to renew the Personal Protection Order by plaintiff.

Defendant argues that because there was no evidence of domestic violence, this factor should not have weighed in favor of either party. However, the trial court correctly noted that although there was no evidence of *physical* violence, plaintiff testified that she had once obtained a PPO against defendant due to a number of abusive texts he had sent her. Although defendant testified that he did not recall sending the text messages, he did not deny that plaintiff had received a PPO. Notably, the statute does not define "domestic violence," and it is not apparent that such a definition is limited to physical violence. Indeed, in a criminal context, "domestic violence" includes "mental harm." See MCL 768.27b(5)(a)(*i*). Regardless, assuming that

-10-

defendant's behavior and the PPO were not properly considered under this specific factor, it would have been properly considered under the catch-all factor of factor (*l*), which allows a court to consider "[a]ny other factor considered by the court to be relevant to a particular child custody dispute."

Moreover, a review of the record provides additional evidence for the trial court's conclusion that this factor (k) weighs slightly in plaintiff's favor. In one pleading filed prior to the parties' divorce, plaintiff alleged that defendant attempted to remove the parties' children from the home of plaintiff's mother. When plaintiff's mother refused, defendant hit her. According to the filing, defendant and plaintiff's mother obtained PPOs against one another. In the same filing, plaintiff alleged that defendant locked her in a room and assaulted her after she had invited him to her home to discuss a parenting time schedule. When evaluating the child custody factors, the trial court may consider any record information relevant to the children. See *Thompson v Thompson*, 261 Mich App 353, 355-357; 683 NW2d 250 (2004) (upholding a trial court's denial of the defendant's motion to limit evidence to the incidences, occurrences, and events that took place after the entry of a prior temporary custody order). There is evidence on the record to support the trial court's findings. Further, this factor involves credibility determinations, and this Court defers to the trial court on such matters. *Berger*, 277 Mich App at 705.

### F.  OVERALL EVALUATION OF BEST-INTEREST FACTORS

The trial court weighed the various best interest factors and found that factors (c), (e), (h), (j), and (k) favored plaintiff; factors (a), (b), (f), and (g) favored both plaintiff and defendant; and factor (d) favored neither party. Importantly, the court found that "no factor[] favors defendant." As a result, the trial court concluded that "plaintiff has met her burden of proof, by clear and convincing evidence, that a change of physical custody is in the best interest of the children." Because none of the trial court's factual determinations on each factor is against the great weight of the evidence, we cannot say that the trial court's ultimate determination—that the move to Texas was in the overall best interests of the children—is against the great weight of evidence as well. Again, it is the trial court's prerogative to determine the credibility of witnesses and to accord differing weight to the best-interest factors. *Sinicropi*, 273 Mich App at 155. Here, regardless of the relative weight placed on each factor, the trial court determined that several factors weighed in favor of plaintiff, while none of the factors specifically favored defendant. Accordingly, the trial court did not abuse its discretion when it granted plaintiff's motion to change the children's domicile, which affected their established custodial environment.

Affirmed.


/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad