MCINTOSH v MCINTOSH

Docket No. 285528. Submitted October 7, 2008, at Grand Rapids. Decided February 17, 2009, at 9:05 a.m.

Steven D. McIntosh obtained a divorce from Kristin R. McIntosh in the Kalamazoo Circuit Court, Family Division, Patricia N. Conlon, J. The defendant was awarded sole legal and physical custody of the parties' minor child. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court properly considered the friend of the court's psychological evaluation, which recommended joint legal and physical custody, in light of all the other evidence presented and did not err by determining that the recommendation was not appropriate. The trial court did not err by refusing to implement the recommendation.

2. The trial court did not err in its evaluation of the best-interest factors provided in MCL 722.23. The trial court did not abuse its discretion by finding clear and convincing evidence to award the defendant sole legal and physical custody of the child.

3. The Court of Appeals lacks jurisdiction to consider whether the trial court erred by entering a postjudgment order awarding the defendant appellate attorney fees because the plaintiff failed to file a claim of appeal from that order.

Affirmed.

PARENT AND CHILD — CHILD CUSTODY — EVIDENCE — PSYCHOLOGICAL EVALUATIONS.

Trial courts may consider psychological evaluations in making child-custody determinations but are not required to adopt any recommendations contained in them; the Child Custody Act requires a court to independently determine what custodial placement is in the best interest of a child (MCL 722.21 *et seq.*).

*James D. Wines* for the plaintiff.

*James C. Boerigter* for the defendant.

Before: MARKEY, P.J., and SAWYER and K. F. KELLY, JJ.

K. F. KELLY, J. In this child custody dispute, we must determine the proper role of, and the proper weight a trial court is to give, psychological evaluations in determining custody in the child's best interests. Plaintiff appeals as of right the judgment of divorce awarding defendant sole legal and physical custody of the parties' minor child. On appeal, plaintiff argues that the trial court erred by failing to implement, and essentially adopt without question, the friend of the court's (FOC) psychological evaluation recommending joint legal and physical custody. Because we conclude that such evaluations are but one piece of evidence amongst many, and are not by themselves dispositive in determining custody, we conclude in light of all the other evidence submitted in this matter that the trial court did not err by refusing to implement the FOC's recommendation. Because plaintiff's additional arguments also fail, we affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

The parties met in the early 1990s when defendant was plaintiff's boss at a Hot 'n Now business. At the time, defendant had a son, Keegan, from a previous relationship. The parties lived together before getting married on October 2, 2004. Their son, Jordan, was born on May 5, 2006.

On July 5, 2007, plaintiff filed his verified complaint for divorce and moved for an ex parte order awarding him sole legal and physical custody of Jordan. He alleged that the parties separated on May 31, 2007, and that because of Keegan's presence in the home, he feared for his and Jordan's safety. On July 5, 2007, the trial court entered an ex parte order awarding the

parties joint custody of Jordan, with Jordan's residence to be with plaintiff and for defendant to have reasonable parenting time. Defendant was precluded from overnight parenting time when Keegan was present.

On July 11, 2007, defendant filed an answer to the complaint and objections to the ex parte custody order. Defendant alleged that plaintiff failed to establish any conduct between Jordan and Keegan to support his alleged fear for Jordan's safety. Defendant also alleged that plaintiff had lied regarding their separation because plaintiff did not leave the marital residence until after the trial court entered the ex parte order, and that after plaintiff moved to his parents' home with Jordan he arbitrarily set terms for defendant's parenting time not set forth in the order. The trial court ultimately entered a consent order modifying the ex parte order to provide for an equal division of physical custody.

Numerous difficulties arose with respect to the parenting time schedule, resulting in several show cause hearings and in parenting time exchanges occurring at the local police station. The trial court referred the case to the Kalamazoo County FOC for a child custody and parenting time evaluation and recommendation. Laura Kracker, a limited license psychologist at Kalamazoo Psychology, L.L.C., performed psychological evaluations of the parties. In the final report, Kracker recommended that the parties continue to share joint legal and physical custody of Jordan.

After the custody and parenting time evaluation was completed, plaintiff moved to modify the consent order to grant him sole physical custody of Jordan. At the bench trial regarding the custody dispute,[1] the parties agreed that Kracker's written evaluation and recom-

---

[1] Before trial, the parties reached a property settlement. The property division is not at issue in this appeal.

mendation would be admitted as a trial exhibit. Defendant testified that she wanted sole custody of Jordan, with parenting time for plaintiff, but would not be opposed to joint custody. She also requested that plaintiff pay her attorney fees. Plaintiff indicated that he wanted sole physical custody and joint legal custody of Jordan, but would try to facilitate Jordan's relationship with defendant.

On April 8, 2008, in a written opinion, the trial court awarded defendant sole legal and physical custody of Jordan. The trial court also granted defendant's request for attorney fees on the basis of the disparity in income between the parties. On April 28, 2008, the trial court entered a judgment of divorce incorporating the custody determination. The trial court then granted defendant's request for an additional $2,000 in attorney fees in anticipation of an appeal and entered a postjudgment order to this effect on May 15, 2008.

## II. STANDARDS OF REVIEW

We apply three standards of review in child custody cases. First, the trial court's findings of fact are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994) *(Fletcher I)*. The trial court need not comment on each item of evidence or argument raised by the parties, but its findings must be sufficient for this Court to determine whether the evidence clearly preponderates in the opposite direction. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). This Court defers to the trial court's determinations of credibility. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008); *Fletcher v Fletcher*, 229 Mich App 19,

25; 581 NW2d 11 (1998) *(Fletcher II)*. Second, a trial court commits clear legal error under MCL 722.28 when it incorrectly chooses, interprets, or applies the law. *Fletcher I, supra* at 881. Third, discretionary rulings are reviewed for an abuse of discretion. *Id.* at 879; *Shulick v Richards*, 273 Mich App 320, 323-325; 729 NW2d 533 (2006).

A trial court's findings regarding each best interests factor are reviewed under the great weight of the evidence standard. *Berger, supra* at 705. The trial court's ultimate custody decision is reviewed for an abuse of discretion. *Id.* The overriding concern is the child's best interests. *Fletcher II, supra* at 29. When a party seeks joint custody, the trial court must also consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b).

### III. PSYCHOLOGICAL EVALUATION

Plaintiff argues that the trial court erred by "ignoring" and refusing to implement the recommendation from the psychological evaluation, which recommended continuing the shared 50/50 custodial arrangement. We disagree. Plaintiff mistakes the proper use and role of a psychological evaluation. While trial courts may consider psychological evaluations, and, at their discretion, afford them the weight they deem appropriate in accord with the Michigan Rules of Evidence, psychological evaluations are not conclusive on any one issue or child custody factor. The ultimate resolution of any child custody dispute rests with the trial court. See *Harvey v Harvey*, 470 Mich 186, 187; 680 NW2d 835 (2004) ("[T]he Child Custody Act [MCL 722.21 *et seq.*] requires the circuit court to determine independently what custodial placement is in the best interests of the children.") (Footnote omitted.)

In declining to adopt the recommendation of the FOC report and psychological report, the trial court stated:

> This case had a lot of contact with the Court since the summer of 2007. And as cases go, documents were filed by both sides and there were conferences by both sides. What was very evident throughout this entire case from the very beginning of the filing of the complaint of—for divorce, up until the closing argument of counsel was that the father, Plaintiff in this case, was on a very focused mission to remain in control of the case and at all costs the child of the parties to the extent that he denied the child seeing the mother in the beginning of the case and for periods of time until an order was entered saying that the mother was to be allowed to see the child.
>
> I will confess that none of that quite hit home to this judge until the actual trial, until I heard the parties testify. I was greatly impacted by the testimony in this case in my decision and the evidence. As far as I understand, the law in Michigan, there is nothing that says that a judge making a custody decision has to rubberstamp what the Friend of the Court evaluation does and, in fact, sadly what I am learning by my number of years on the bench is that many times these evaluators that we trust to give us an open-minded opinion, what they end up doing is rubberstamping temporary orders that are issued by Courts on very limited information or temporary orders that are entered because the parties agree on something in the beginning of the case.
>
> \* \* \*
>
> I was not expecting the testimony or the evidence that I got at trial. At the most, I think at the most, [plaintiff's counsel] would have to be—acknowledge this, at the most, I said probably will follow the recommendation of joint. Probably, because that's very often what I do, and if they had a 50/50 situation, that's probably the way the evidence would be. That's probably the most that I said because that's how I saw it at the time before trial, and I fully expected that the end result, that we would have wasted our time at trial, I fully expected that the end result would be that I would say, okay,

I've heard all this testimony. Now the father's gonna have 50-percent of the time and mother's gonna have 50-percent of the time, which was recommended.

Instead, when I reflected on the testimony and the evidence, and went back to the pleadings in this case, I was shocked. Totally shocked to see that it was not meritorious at all to agree with the Friend of the Court evaluation, and there's nothing under the law that says I have to agree . . . .

We commend the learned trial court's reasoning in this matter. Although the parties' agreement to admit Kracker's report allowed the trial court to *consider* the psychological evaluation, the trial court, as it recognized, was not in any way compelled to adopt its recommendation. Rather, a trial court may consider all the competent evidence presented at the hearing in arriving at its own custody decision and give each the weight as it deems appropriate. See *Duperon v Duperon*, 175 Mich App 77, 79; 437 NW2d 318 (1989) (a trial court has a duty to arrive at its own custody decision on the basis of competent evidence presented at trial). Here, the trial court properly considered the psychological evaluation in light of all the other evidence presented and determined that the FOC's recommendation was not appropriate. The trial court did not err by refusing to implement the FOC's recommendation.

### IV. AWARD OF SOLE LEGAL AND PHYSICAL CUSTODY

Plaintiff next contends that the trial court erred in awarding defendant sole legal and physical custody because there was insufficient clear and convincing evidence presented to alter the existing joint custody arrangement.[2]

---

[2] When resolving a custody dispute between parents, a trial court must first determine if there is an established custodial environment. MCL 722.27(1)(c) provides that "[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the

He also asserts that the trial court erred in its evaluation of the best interests of the child factors in reaching its custody determinations. We find no error and affirm the award of sole legal and physical custody to defendant.

MCL 722.28 governs child custody disputes on appeal:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Accordingly, absent error in the lower court proceedings, we may not substitute our judgment for that of the trial court.

In order to resolve a child custody dispute, a trial court must evaluate the best interests of the child in light of the factors in MCL 722.23:

> "[B]est interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." An established custodial environment cannot be changed unless the court is presented with clear and convincing evidence that a change of custody is in the child's best interests. MCL 722.27(1)(c); *Jack v Jack*, 239 Mich App 668, 670; 610 NW2d 231 (2000). Here, the trial court determined that an established custodial environment existed with both parties in light of the original ex parte order that was amended by consent to allow each party 50/50 parenting time and the trial court applied the clear and convincing evidence standard of proof.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Plaintiff has not challenged the trial court's finding that the parties were equal with respect to a number of best interests factors in MCL 722.23. Specifically, plaintiff only challenges the trial court's findings with respect to best interests factors f, j, k, and l, primarily on the basis of the trial court's finding that plaintiff is an alcoholic. Plaintiff asserts that there is not a scintilla of competent evidence to establish his alcoholism. We disagree.

Plaintiff has a long history of alcohol use. Defendant testified that plaintiff's alcohol use was a problem even before the marriage. She testified that he became violent and angry when he drank. She found out when they were seeing a marriage counselor that plaintiff was hiding liquor at the marital residence. In the beginning of 2007, plaintiff admitted that he was an alcoholic and he had a relapse in May 2007. On one occasion, defendant found plaintiff passed out in bed with a bottle of vodka next to him. On the date of the "first exchange" for defendant to have overnight parenting time with Jordan, she could tell that plaintiff had been drinking from the way that he tossed Jordan in the air and because she could "smell it" and saw that his eyes were glassy. Plaintiff also testified that he abused alcohol for a while, but only classified a four- to six-month period as a "problem." He conceded hiding alcohol and attending Alcoholics Anonymous (AA) meetings for seven or eight months beginning in January 2007. He also planned to attend additional AA meetings.

The trial court properly considered this evidence in evaluating factor f, "[t]he moral fitness of the parties involved." MCL 722.23(f). Our Supreme Court has indicated that having a drinking problem is a type of conduct that bears on how one functions as a parent, which can be considered under the moral fitness factor. *Fletcher I, supra* at 887 n 6. Giving deference to the trial court's assessment of the credibility of witnesses, its finding that this factor should favor defendant on the basis of plaintiff's unresolved alcohol problem is not against the great weight of the evidence.

Plaintiff's challenge to the trial court's finding on factor j, "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other

parent," MCL 722.23(j), is without merit. The trial court mentioned plaintiff's "controlling behavior and alcoholic behavior, at this point" in finding that plaintiff "would do everything in his power to interfere with and upset the parent/child relationship of the mother." Moreover, the trial court considered the entire case history in concluding that this factor favored defendant. Plaintiff was found to have withheld Jordan from defendant without cause, to have reported defendant to the police and protective services, and, "overall, [to have] behaved in a manner designed to cause upset, and influence the mother/child relationship in this case." The trial court made other findings with respect to the proceedings, which included its entry of an ex parte order in November 2007 for plaintiff to return Jordan to defendant. Considering the evidence as a whole, the trial court's decision to weigh factor j in favor of defendant is not against the great weight of the evidence. There was record evidence to support the trial court's finding that plaintiff was unwilling or unable to facilitate and encourage a close relationship between defendant and Jordan.

With respect to factor k, "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child," MCL 722.23(k), the trial court found:

> There was evidence that there was at least one incident of domestic violence in the home perpetrated by the father against the mother. This is not surprising given his testimony regarding his relationship with alcohol. There was at least one conviction[3] for domestic violence in the history of their relationship. Although the father tried to show that the mother had violent behavior, the only testimony was

---

[3] This was actually an adjudication from the juvenile court, resulting from a physical altercation between Keegan and plaintiff.

> that she threw a glass at the father on one occasion. There was no other testimony of domestic violence perpetrated by the mother against the father.
>
> The mother testified that the father had been abusive throughout the marriage, which would explain in part the apparent traumatized behavior of the older boy in the home.

Considering defendant's testimony that she was physically assaulted by plaintiff, as well as plaintiff's own testimony admitting that he was "probably" physically assaultive toward defendant on two occasions, we find no basis for disturbing the trial court's finding that the domestic violence factor favored defendant.

Factor *l* is "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). Factor *l* is a "catch-all" provision. *Ireland v Smith*, 451 Mich 457, 464 n 7; 547 NW2d 686 (1996). Contrary to plaintiff's argument on appeal, the trial court did not expressly weigh this factor in favor of defendant. Rather, the court used factor *l* to comment on various matters, including the parties' love for their son and plaintiff's conduct during this case, which were already considered under other factors or affected its decision to change the joint custody arrangement. The trial court also used factor *l* to comment on arguments raised at trial regarding defendant's parenting skills with respect to her teenaged son, finding that plaintiff also had substantial involvement in the teenaged son's life before and after plaintiff became his stepfather, but did not weigh any "parenting skills" factor in favor of either party. It also addressed relevant circumstances when assessing the "[a]ny other factor" in MCL 722.23(*l*). It found that plaintiff, "failed, to this date, to understand or admit how inappropriate his behavior was at the time of the initial filing of this case, and how it resulted in an act of cruelty perpetrated on the minor

child." Overall, the trial court's findings with respect to factor *l* are consistent with its decision to weigh the parties the same with respect to the love and affection factor in MCL 722.23(a) and the "guidance" factor in MCL 722.23(b), but to weigh factor j in favor of defendant. We are not persuaded that the trial court's findings with respect to factor *l* are against the great weight of the evidence.

Considering the circumstances and evidence presented, the court did not abuse its discretion by finding clear and convincing evidence to award defendant sole legal and physical custody. *Berger, supra* at 705.

### V. APPELLATE ATTORNEY FEES

Plaintiff also argues that the trial court erred in awarding defendant appellate attorney fees. MCR 3.206(C)(2) allows a trial court to award appellate attorney fees. *Gates v Gates*, 256 Mich App 420, 439; 664 NW2d 231 (2003). The party requesting attorney fees must show that the attorney fees were incurred and that they were reasonable. *Reed v Reed*, 265 Mich App 131, 165-166; 693 NW2d 825 (2005). A trial court's grant of attorney fees is reviewed for an abuse of discretion. *Id.* at 164. However, because plaintiff failed to file a claim of appeal from the postjudgment order awarding appellate attorney fees, we conclude that the Court lacks jurisdiction over this issue.

"The question of jurisdiction is always within the scope of this Court's review . . . ." *Walsh v Taylor*, 263 Mich App 618, 622; 689 NW2d 506 (2004). This Court has jurisdiction of an appeal as of right filed by an aggrieved party from a "final judgment or final order . . . ." MCR 7.203(A)(1). MCR 7.202(6)(a)(i) and (iv) defines "final judgment" or "final order" in a civil case as "the first judgment or order that disposes of all the

claims and adjudicates the rights and liabilities of all the parties," or "a postjudgment order awarding or denying attorney fees and costs . . . ." An appeal as of right must be filed within "21 days after entry of the judgment or order appealed from[.]" MCR 7.204(A)(1)(a). The filing of the claim of appeal and the entry fee vests this Court with jurisdiction in an appeal as of right. MCR 7.204(B)(1) and (2).

Here, the trial court's May 15, 2008, postjudgment order required plaintiff to pay defendant attorney fees of $2,000 in anticipation of appeal. Plaintiff never appealed this postjudgment order. Instead, plaintiff merely argued in his claim of appeal from the judgment of divorce that the trial court erred in awarding attorney fees. Because plaintiff was required to file a separate claim of appeal from the postjudgment order and he did not, we lack jurisdiction to consider this issue.

### VI. EX PARTE ORDER

With respect to plaintiff's general challenge to the trial court's remarks concerning the ex parte custody order entered on July 5, 2007, we conclude that plaintiff has failed to sufficiently brief this issue for purposes of appellate consideration. *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008). Therefore, we consider this argument abandoned on appeal. *Id.*

### VII. TRIAL COURT'S ADMONISHMENT OF PLAINTIFF'S RELATIVES

Finally, plaintiff's argument that the trial court abused its discretion by "dressing down" two women for interfering with the parties' parenting time is not properly before us because plaintiff has not identified the legal or factual basis for his argument as MCR

7.212(C)(7) requires. This Court will not search the record for factual support for a party's claim. *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 388; 689 NW2d 145 (2004). Further, this Court has "held repeatedly that appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority." *VanderWerp, supra* at 633.

Affirmed.