*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* PREPODNIK, Minor.

FOR PUBLICATION
May 13, 2021
9:00 a.m.

No. 352041
Iron Circuit Court
LC No. 17-000031-JG

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

In this action regarding a juvenile guardianship, appellant Shirley Ridolphi, the guardian of EP, appeals by leave granted[1] the trial court's order denying Ridolphi's challenge to the trial court's authority to grant visitation with EP's paternal relatives. We reverse.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Department of Health and Human Services (DHHS) initiated neglect proceedings regarding EP after his father's death and because of his mother's struggle with substance abuse. Eventually, the trial court judge in the neglect proceedings determined that it would be in EP's best interests to appoint a juvenile guardian for EP and not to terminate his mother's parental rights. Ridolphi and EP's paternal aunt, Jeanann Upperstrom, were the only two who sought to be appointed as EP's guardian. After an evidentiary hearing on the issue, the court in the neglect proceedings awarded the juvenile guardianship to Ridolphi. That court cautioned Ridolphi that it believed it was in EP's best interests to maintain a meaningful relationship with his paternal family, even if a specific court order was required to ensure that.

Given that a juvenile guardianship had been established, the present case was opened to monitor it. Issues between the Upperstroms and Ridolphi arose almost immediately and continued

---

[1] Originally, this Court denied Ridolphi's application for leave to appeal. *In re Prepodnik*, unpublished order of the Court of Appeals, entered April 17, 2020 (Docket No. 352041) (METER, J., would have granted leave to appeal). However, on October 27, 2020, in lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted. *In re Prepodnik*, ___ Mich ___; 949 NW2d 698 (2020).

through to this appeal. The trial court, relying largely on the decision in the neglect proceedings, awarded significant visitation with the Upperstroms, who lived in Green Bay, Wisconsin. Indeed, the order was similar to those typically issued to a noncustodial parent—EP spent one weekend per month, alternating holidays, and half of the summer in Green Bay. An order setting out those specific dates was set to expire in August 2019, and the trial court was considering entering another similar order for the next year. Ridolphi, citing her status as EP's full legal guardian, challenged the issuance of the new order, contending that the Upperstroms had no legal basis to request court-ordered visitation, and thus, the trial court had no authority to grant it. There was some implication in the proceedings that Jeanann was coordinating visitation for EP's paternal grandmother, Patsy Prepodnik. Patsy, however, did not participate in the case to any extent, except showing up to a mediation session in November 2017.

After a two-day evidentiary hearing in October 2019, the trial court determined that it did have the authority to order Ridolphi, as full legal guardian, to allow EP to have significant visitation with the Upperstroms in Green Bay. This appeal followed.

## II. JUVENILE GUARDIANSHIPS AND VISITATION

Ridolphi argues that the trial court did not have authority to grant, and Jeanann did not have authority to request, parenting time with EP. We agree.

## A. STANDARDS OF REVIEW

In a recent case involving requested visitation by a nonparent relative—a grandparent—this Court provided the following summary of law regarding the appropriate standards of review:

> "Orders concerning [grand]parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Keenan v Dawson*, 275 Mich App 671, 679; 739 NW2d 681 (2007) (quotation marks and citation omitted). The Court should affirm a trial court's findings of fact unless the evidence "clearly preponderate[s] in the opposite direction." *Fletcher v Fletcher*, 447 Mich 871, 879; 526 NW2d 889 (1994) (quotation marks and citation omitted; alteration in original). A trial court abuses its discretion on a custody matter when its "decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). We conclude that this standard should also apply to decisions about parenting and grandparenting time. A court commits clear legal error "when it incorrectly chooses, interprets, or applies the law." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). [*Geering v King*, 320 Mich App 182, 188; 906 NW2d 214 (2017) (alterations in original).]

## B. LAW AND ANALYSIS

The trial court committed a clear legal error when it determined that it had the authority to order visitation with EP's paternal relatives, including his paternal grandmother, organized by Jeanann.

Ridolphi contends that Jeanann did not have legal authority to request, and the trial court did not have legal authority to grant, parenting time with the Upperstroms in Green Bay. This juvenile guardianship, unlike a typical guardianship, arose during neglect proceedings involving EP and his mother. MCR 3.979(E) ("A juvenile guardianship approved under these rules is authorized by the Juvenile Code and is distinct from a guardianship authorized under the Estates and Protected Individuals Code."). During neglect proceedings, courts are required to hold permanency planning hearings, at which, "the court shall determine whether and, if applicable, when the . . . child may be placed in a legal guardianship." MCL 712A.19a(4)(c). Indeed, under MCL 712A.19a(9)(c), juvenile guardianships are one of a few options available to a court when it determines that termination of parental rights is not in the best interests of the minor child. In the neglect case involving EP, the judge decided that a guardianship with Ridolphi, without terminating the parental rights of EP's sole living parent, was in EP's best interests. *Id*.

When a trial court finds that appointment of a juvenile guardian is in the best interests of the minor child, it is required to enter an order establishing such and appointing the guardian. MCR 3.979(B). The chosen guardian, then, must file an acceptance of that appointment, which at a minimum must state "that the juvenile guardian accepts the appointment, submits to personal jurisdiction of the court, will not delegate the juvenile guardian's authority, and will perform required duties." MCR 3.979(B)(1). Subsequently, the court issues "Letters of Authority" to the guardian, in which "[a]ny restriction or limitation of the powers of the juvenile guardian must be set forth . . . , including but not limited to, not moving the domicile of the child from the state of Michigan without court approval." MCR 3.979(B)(2). Despite being separate from typical guardianships in Michigan, "[a] guardian appointed under subsection (9)(c) has all of the powers and duties set forth under . . . MCL 700.5215." MCL 712A.19a(10). See also MCR 3.979(E) ("A juvenile guardian has all the powers and duties of a guardian set forth under section 5215 of the Estates and Protected Individuals Code."). In that regard, according to MCL 700.5215, "[a] minor's guardian has the powers and responsibilities of a parent who is not deprived of custody of the parent's minor and unemancipated child . . . ."

After appointing a juvenile guardian in a neglect case, the statutory scheme requires that the neglect proceedings be dismissed. MCL 712A.19a(12) ("The court's jurisdiction over a juvenile under [MCL 712A.2(b)] must be terminated after the court appoints a guardian under this section and conducts a review hearing under section 19 of this chapter, unless the juvenile is released sooner by the court."); MCR 3.979(C)(1)(a) ("The court's jurisdiction over a juvenile under section 2(b) of the Juvenile Code, MCL 712A.2(b) . . . shall be terminated after the court appoints a juvenile guardian under this section and conducts a review hearing . . . ."). The court's jurisdiction over the juvenile guardianship, however, "must continue until released by court order." MCL 712A.19a(13). See also MCR 3.979(C)(1)(a) ("[T]he court's jurisdiction over a juvenile guardianship shall continue until terminated by court order."). "The court shall review a

guardianship created under this section annually and may conduct additional reviews as the court considers necessary." MCL 712A.19a(13). Those annual review hearings must continue until the child turns 18 years old. MCR 3.979(D)(1). When reviewing juvenile guardianships, the trial court is required to consider an abundance of issues and factors, including "any written or oral information concerning the child from the child's parent, guardian, custodian, foster parent, child caring institution, relative with whom the child is placed, or guardian ad litem *in addition to any other evidence, including the appropriateness of parenting time*, offered at the hearing." MCL 712A.19a(14) (emphasis added).

In sum, then, the statutory law, MCL 712A.19a(10), and court rule, MCR 3.979(E), governing juvenile guardianships created during neglect proceedings provide that a juvenile guardian "has the powers and responsibilities of a parent . . . ," MCL 700.5215. This Court, in a recent opinion, determined that a parent of a child subject to a juvenile guardianship who has not had their parental rights terminated, may seek a court order for parenting time. *In re Ballard*, 323 Mich App 233, 237-238; 916 NW2d 841 (2018). This Court in *Ballard* reasoned that, "[b]ecause MCL 712A.19a(14) plainly envisions a trial court having an authoritative role with respect to parenting time during the course of a guardianship, we construe MCL 712A.19a(14) as providing a court with authority to order parenting time for a parent after a juvenile guardianship has been established . . . ." *Ballard*, 323 Mich App at 237. Consequently, the juvenile guardian's role can be invaded by a parent seeking parenting time with the minor child that is subject to the guardianship. *Id*. Notably, however, this case does not involve a *parent* seeking parenting time with EP. Instead, it involves Jeanann, the paternal aunt, seeking parenting time for, purportedly, the entire paternal family.

While MCL 712A.19a(14) and *Ballard* only bestow such a right on a parent, there is statutory and caselaw support for one other type of relative seeking court-ordered visitation in the case of a guardianship. To begin, recall that a juvenile guardian has the powers and responsibilities of a parent in most cases. MCL 712A.19a(10); MCL 700.5215; MCR 3.979(E). Thus, a juvenile guardian, like a parent, is typically provided the right to choose what third parties interact with their child or ward. MCL 700.5215(c) ("The guardian shall facilitate the ward's education and social or other activities, and shall authorize medical or other professional care, treatment, or advice."). Courts, however, can invade the role of that decision of a parent under certain circumstances involving grandparents. MCL 722.27b. In pertinent part, MCL 722.27b(1)(c) permits a grandparent to "seek a grandparenting time order" when "[t]he child's parent who is a child of the grandparents is deceased." Similarly, a grandparent can seek such an order when "legal custody of the child has been given to a person other than the child's parent, or the child is placed outside of and does not reside in the home of a parent." MCL 722.27b(1)(e). In *Book-Gilbert v Greenleaf*, 302 Mich App 538, 547; 840 NW2d 743 (2013), this Court held that a grandparent could obtain an order for grandparenting time when a child was placed in a juvenile guardianship. Notably, this Court further held that a guardian was not entitled to the presumption given to a "fit parent" under MCL 722.27b(4)(b) regarding the decision to deny grandparenting time. *Book-Gilbert*, 302 Mich App at 547-549.

To summarize, it is clear that there is statutory and caselaw support for a parent and grandparent to seek court-ordered visitation from a juvenile guardian. The parties have not identified any statutes, court rules, or caselaw that suggest a relative who is not a parent or grandparent has authority to request court-ordered visitation, nor does there appear to be any.

Likely because of that, early on in the proceedings, DHHS sought to ensure that the trial court understood that Jeanann was coordinating visitation with EP's paternal relatives, including his paternal grandmother, Patsy. This was an important distinction because, as discussed, grandparents have a right to seek grandparenting time under certain circumstances. MCL 722.27b(1). Indeed, in the family court's August 2018 order, it was clear that Jeanann was "coordinating" visitation with the paternal family. As the case progressed, and especially during the final evidentiary hearing dates, the implication that Jeanann was coordinating with Patsy was never mentioned. In the brief filed by DHHS before the evidentiary hearing took place, it specifically relied on *Ballard*, 323 Mich App at 237-238, and MCL 712A.19a(14), which provides for a parent to seek parenting time from a guardian. DHHS implied, without providing legal support for the argument, that the Upperstroms could step into the shoes of EP's deceased father to seek parenting time. The grandparenting time statute, MCL 722.27b, was not mentioned and Patsy's involvement in the case was not referenced. At the October 2019 hearings, all of the testimony regarding the paternal family involved EP's interactions with the Upperstroms and their children. Patsy was not mentioned during the hearing, nor was she called to testify. In fact, Patsy never testified in the case at all.

Nevertheless, because of those implications in the record, there seems to be a suggestion that the trial court's authority for entering visitation orders sprung from the grandparenting time statute, MCL 722.27b. Reading the record in such a manner would defy logic and common sense. The clear implication from the proceedings was that parenting time was being ordered for the Upperstroms, not Patsy. Thus, the trial court's order requiring visitation with Jeanann and her family, but not Patsy, lacked legal authority.

Importantly, even if it were true that Jeanann was merely representing Patsy's interests in the case, the appropriate procedural steps were not taken to ensure grandparenting time. Under MCL 722.27b(3)(a), when, as here, "the circuit court has continuing jurisdiction over the child, the child's grandparent shall seek a grandparenting time order by filing a motion with the circuit court in the county where the court has continuing jurisdiction." Further, the required motion "shall be accompanied by an affidavit setting forth facts supporting the requested order." MCL 722.27b(4)(a).

In the present case, there is no evidence of a motion filed by Patsy, or Jeanann on Patsy's behalf, seeking a grandparenting time order. Instead, the first time that visitation with the paternal family was ordered was in the neglect proceedings. That arose after an extended hearing about whether Jeanann or Ridolphi should be made EP's juvenile guardian. There is no indication that Patsy was involved in that case or requested grandparenting time. Moreover, to the extent that certain visitation orders were entered, they had since expired. Indeed, the order being appealed in the present case was entered *after* the August 2018 visitation order expired. Thus, for purposes of this appeal, the true issue was whether to order visitation for EP's paternal family. Even if we were to assume that Patsy was behind the requests, despite a lack of evidence supporting that contention, the proper procedural steps still were not taken. Neither Patsy, nor anyone on her behalf, filed a motion seeking grandparenting time. Further, there was no evidence of an affidavit by Patsy detailing her reasons for seeking such time. Consequently, the trial court had no legal authority under MCL 722.27b to grant court-ordered visitation to EP's paternal family. As discussed earlier, there is no statutory support for Jeanann, on her own, to request court-ordered visitation either.

This analysis of the issue is supported by this Court's decision in *Falconer v Stamps*, 313 Mich App 598, 601; 886 NW2d 23 (2015), which involved a custody dispute between a minor child's mother and paternal grandmother. After an evidentiary hearing on the issue, the trial court awarded full legal and physical custody to the child's mother. *Id*. at 637, 639. The trial court continued, however, by awarding significant grandparenting time to the paternal grandmother. *Id*. at 601, 639. On appeal, this Court noted that a request for grandparenting required a motion to be filed along with a supporting affidavit. *Id*. at 643. Consequently, the panel reversed the trial court's decision because that motion and affidavit were not filed and "a request for grandparenting time is not automatically included in a third-party request for custody." *Id*. at 648. Instead, the Court determined that it must "vacate that portion of the circuit court's order that granted [the paternal grandmother] grandparenting time where the issue of grandparent visitation was not properly before the circuit court." *Id*.

The same problem exists in the present case. As established, Jeanann and her family have no authority to seek court-ordered visitation with EP. While Patsy does have such authority under the law, there are certain procedural requirements. In pertinent part, she was required to file a motion along with a supporting affidavit. MCL 722.27b(3)(a) and (4)(a). Her failure to do so in this case, like the paternal grandmother's failure in *Falconer*, 313 Mich App at 643, 648, was fatal to a claim for grandparenting time. In sum, the trial court only had legal authority to award court-ordered visitation for Patsy, but the procedural requirements for doing so were not met in this case. Therefore, by ordering EP to have significant visitation with the Upperstroms, the trial court went beyond its authority, and we reverse.[2]

Reversed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica

---

[2] Considering that reversal is required because of the trial court's lack of legal authority, the remaining issues raised by Ridolphi have been rendered moot, and we decline to consider them. *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018).

It is important to note that the trial court is not left without recourse if it believes that Ridolphi is not acting in EP's best interests by limiting his relationship with his paternal family. As discussed, the trial court maintains jurisdiction over the guardianship and must annually review the case. MCR 3.979(D)(1)(a); MCL 712A.19a(13). The court can also schedule more reviews, if it sees fit. *Id*. In doing so, if the trial court determines that the juvenile guardian is no longer appropriate, it can revoke the guardianship. MCR 3.979(F)(1)(a); MCL 712A.19a(15). Thus, by alerting Ridolphi to the fact that the court believes that EP's best interests would be served by maintaining a meaningful relationship with his paternal family, the implied course of action for violation of that finding would be to revoke Ridolphi's guardianship. Stated differently, if a trial court believes that a juvenile guardian does not wish to act in a minor child's best interests, then it can always revoke the guardianship and appoint someone else who will take those interests into consideration. Given the state of the law in Michigan, the court cannot, however, order a juvenile guardian to provide parenting time with relatives who are not parents or grandparents.