*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. M. HENDERSON, Minor.

UNPUBLISHED
July 21, 2022

No. 360075
Wayne Circuit Court
Family Division
LC No. 2012-509869-NA

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, BMH. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) (parent failed to provide proper care or custody and no reasonable expectation parent will provide proper care or custody within a reasonable time), (i) (parental rights to one or more siblings terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful), and (j) (reasonable likelihood child will be harmed if returned to the parent's home).[1] We affirm.

In October 2019, shortly after BMH was born, petitioner, the Department of Health and Human Services (the DHHS), filed an original permanent custody petition. The petition alleged that respondent previously had her parental rights terminated to three other children "because of her untreated mental health issues," which the petition identified as diagnoses for "bipolar disorder and schizoaffective disorder."[2] According to the petition, respondent's mental health issues required medication and counseling, but respondent was not compliant with her medication nor participating in counseling. The petition also alleged that respondent was "a legally incapacitated

---

[1] The trial court also terminated BMH's unidentified father's rights under MCL 712A.19b(3)(a)(*i*) (parent is unidentifiable) and (k)(*i*) (parent abused the minor child and the abuse included abandonment).

[2] Throughout the lower court proceedings, the parties and the trial court used "schizoaffective disorder" and "schizophrenia" interchangeably, but the petition alleged that respondent had schizoaffective disorder.

-1-

individual," and that she had not provided any prenatal care for BMH until 34 weeks into her pregnancy. The petition asked the trial court to take jurisdiction of BMH and terminate respondent's parental rights.

At the eventual termination hearing in February 2020, Amber Gayden, the Children's Protective Services (CPS) Investigator who filed the petition, testified about the allegations in the petition. Pertinently, Gayden testified that respondent had not been treated for her mental health disorders in about two years, that respondent had "unstable housing," and that respondent had provided limited prenatal care to BMH by not visiting a doctor until she was 34 weeks pregnant.

At the end of hearing, the trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(g), (i), and (j). After delivering its ruling, the trial court stated that it would schedule a separate hearing to determine the best interests of BMH.

However, due to the pandemic and respondent's objection to holding a best-interest hearing by Zoom, the best-interest hearing did not occur until January 2022. At the end of the best-interest hearing, after hearing the evidence and listening to the parties' arguments, the trial court found by a preponderance of the evidence that termination of respondent's parental rights was in BMH's best interests. This appeal followed.

Respondent raises two issues on appeal: (1) whether the trial court properly found statutory grounds for termination by clear and convincing evidence and (2) whether the trial court properly found by a preponderance of the evidence that termination was in BMH's best interests.[3]

---

[3] To the extent that respondent seemingly challenges whether she was afforded reasonable efforts, that issue is waived because respondent did not include the issue in her questions presented and otherwise did not sufficiently brief the issue on appeal. See *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."); *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009) ("Further, this Court has held repeatedly that appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority.") (Quotation marks and citation omitted.)

Regardless, respondent was not entitled to reasonable efforts because one of the circumstances listed in MCL 712A.19a(2)—specifically subsection (2)(c)—applied to this case. See *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). That subsection provides that reasonable efforts are not required if "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c). The record established that respondent previously had her rights to at least one of BMH's siblings involuntarily terminated, and that respondent had failed to rectify the conditions that led to that termination.

We first address respondent's statutory-grounds argument. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court's reviews for clear error a trial court's finding of a statutory ground for termination. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). A finding is clearly erroneous if this Court "is left with the definite and firm conviction that a mistake has been made." *Id.* at 271 (quotation marks and citations omitted).

Under MCL 712A.19b(3)(j), a trial court may terminate parental rights if it finds by clear and convincing evidence that there is a reasonable likelihood, based on the parent's conduct or capacity, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err in determining that this ground was supported by clear and convincing evidence.[4] The record suggested that respondent's mental health disorders would limit her ability to parent BMH. At the termination hearing, Gayden testified that respondent had bipolar disorder and schizophrenia, that respondent was legally incapacitated, and that respondent had a legal guardian appointed by a probate court. According to Gayden, respondent had not been treated for her mental health disorders in about two years. Additionally, records from the Northeast Guidance Center, which were entered into evidence, stated that respondent had been hospitalized three times because of her mental health disorders and that her mental health disorders rendered her unable to work. On the basis of this evidence, the trial court could reasonably infer that respondent lacked the ability to care for a child, and, consequently, that there was a reasonable likelihood that BMH would be harmed if placed in respondent's care. Bolstering the trial court's inference was respondent's failure to seek prenatal care until the thirty-fourth week of her pregnancy, which would tend to suggest how respondent would care for—or more accurately, not care for—BMH in the future if placed in respondent's care.

Accordingly, we are not definitely and firmly convinced that the trial court made a mistake when it found that there was a reasonable likelihood, on the basis of respondent's conduct or capacity, that BMH would be harmed if placed in respondent's care. Because only one ground for termination need be established, we decline to address whether termination was proper under the remaining grounds found by the trial court. See *In re Schadler*, 315 Mich App 406, 410; 890 NW2d 676 (2016).

Next, respondent challenges the trial court's finding that termination was in BMH's best interests. "[O]nce a statutory ground for termination is established, the trial court must then determine whether termination is in the best interests of the child." *In re Moss*, 301 Mich App at 86. Whether termination is in the child's best interests must be proved by a preponderance of the evidence. *Id.* at 90. This Court reviews for clear error a trial court's finding that termination is in a child's best interests. *In re Williams*, 286 Mich App at 271.

---

[4] We note that the trial court found statutory grounds to terminate respondent's parental rights at the February 2020 hearing, and thus evidence introduced at the January 2022 best-interest hearing is not properly considered for the statutory-grounds analysis.

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354916); slip op at 11, quoting *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted). " 'The focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (brackets omitted), quoting *In re Moss*, 301 Mich App at 87. Some factors the trial court may consider include:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, . . . the advantages of a foster home over the parent's home, . . . the length of time the child was in care, [and] the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all[.] [*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64 (quotation marks and citations omitted).]

The trial court may also consider the child's age, visitation history, the child's well-being in care, and the possibility of adoption. *In re Sanborn*, ___ Mich App at ___; slip op at 11.

The trial court found that termination was in BMH's best interests in light of evidence that BMH lacked a bond with respondent, there were significant questions about respondent's ability to properly parent BMH, respondent had missed a significant number of her scheduled visits with BMH, BMH was thriving in her foster placement, and BMH's foster parents were willing to adopt BMH. Ample evidence supported each of these bases.

To begin, Kelly Burdell, the foster care supervisor, explained that respondent and BMH never spent enough time together to develop any meaningful bond—BMH had not ever been in respondent's care or custody, respondent had only ever had supervised visits with BMH at petitioner's facilities, and, in the more than two years since the termination hearing, respondent had only attended 31 of the 95 offered visits with BMH. Burdell also testified that, at the beginning of visits, BMH would cry and run to her foster parents. All of this evidence supported that BMH lacked any significant bond with respondent.

Next, evidence supported that there were questions about whether respondent was capable of properly caring for herself, which in turn raised questions about whether she could properly care for BMH. Evidence established that when the petition was filed in October 2019, respondent had not engaged in therapy nor taken any medication to treat her mental health issues in about two years. By the time of the January 2022 best-interest hearing, respondent still had not sought any treatment for her mental health issues. Respondent's struggle to get the care she needed to address her mental health issues reasonably raised questions about whether she would be able to care for BMH. Moreover, as explained earlier, because of her struggles with mental illness, respondent had been deemed legally incapacitated since June 2012, and thus, required a legal guardian, which would tend to suggest that she was not in a position to care for BMH. At the best-interest hearing, Monique Harper and respondent indicated that respondent no longer had a legal guardian, but Harper testified that she still assisted respondent with grocery shopping and other activities of daily living. This would suggest that, even without a legal guardian, respondent was still not in a position to care for a child. Likewise, the fact that respondent missed well over half the visits with

BMH because respondent had a headache or was too tired only underscored that respondent was not ready to be a parent to BMH, guardian or not.

Finally, as the trial court found, the record showed the BMH was bonded with her foster parents and had a sense of permanency and stability in their home. Burdell testified that BMH looked to her foster parents as her actual parents. BMH's foster parents had been meeting all BMH's needs, and she was bonded with them and the other children in the foster home. Burdell also testified that the foster parents desired to adopt BMH. Considering this testimony, the trial court reasonably concluded that removing BMH from this environment to place BMH with respondent would not be in BMH's best interest.

On appeal, respondent argues that the trial court clearly erred in finding by a preponderance of the evidence that termination was in BMH's best interest because respondent provided evidence that she had a suitable home, a job, and a strong bond with BMH. We disagree.

Even though respondent and Harper testified that respondent had a bond with BMH, the trial court reasonably determined that their testimony was not credible in light of Burdell's largely contradictory testimony. We generally defer to the trial court's superior position to judge the credibility of witnesses that appear before it, see *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009), and respondent has not offered any convincing argument to deviate from this general rule in this case.

Next, even though respondent testified that she had a suitable home and a part-time job, the weight of the evidence suggested that respondent still lacked the ability to parent BMH for the reasons previously explained. In other words, while respondent's progress of obtaining a suitable home and a part-time job is admirable, there remained significant concerns about respondent's ability to care for BMH if left in her care.

Altogether, the evidence showed that respondent lacked the ability to be a parent, respondent lacked a bond with BMH, and BMH was placed in a preadoptive home with people to whom she was bonded. Despite evidence that respondent had a suitable home and income, we are not definitely and firmly convinced that the trial court made a mistake when it found by a preponderance of evidence that termination was in BMH's best interest.

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood