*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHRYN SAWYER KARDIFF,

Plaintiff-Appellant,

v

DANIEL RAY GOSS,

Defendant-Appellee.

UNPUBLISHED
August 22, 2025
12:13 PM

No. 374043
Washtenaw Circuit Court
LC No. 16-000298-DS

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

In this child-custody dispute, plaintiff appeals by right the trial court's order denying in part her motion for reconsideration of the court's order maintaining joint legal custody and modifying defendant's parenting time.[1] We affirm.

## I. FACTS

The parties, who briefly dated but never married, are the biological parents of TJK, who was born in August 2015. In February 2016, the parties obtained a custody order awarding joint legal custody to the parties but sole physical custody to plaintiff, with parenting time for defendant as agreed upon by the parties. A year later, the parties entered into a consent agreement that awarded defendant eight hours of regular parenting time on alternating Sundays, and then increased his parenting time six months later to include overnights on the preceding Saturdays. The agreement also awarded both parties select holidays in accordance with "the Washtenaw County holiday schedule except when both parties agree to deviate from the schedule."

In October 2022, defendant filed a motion to increase his parenting time to provide him with alternating weekends from 6:00 p.m. on Friday to 6:00 p.m. on Sunday and a full week during

---

[1] The court's order granted plaintiff's motion for reconsideration only as it related to the parties' participation in and division of costs for family therapy. Plaintiff does not challenge this portion of the order on appeal.

the summer. Plaintiff opposed the motion. Defendant argued that he had consistently participated in parenting time but that the existing schedule made it difficult to develop a stronger relationship with then-seven-year-old TJK, which he desired to do. Plaintiff argued that an increase in defendant's parenting time was not in TJK's best interests because defendant communicated with plaintiff in a way that was inappropriate and emotionally harmful to TJK. In May 2023, after an evidentiary hearing before a Friend of the Court (FOC) referee, the trial court determined that an increase in defendant's parenting time was not in TJK's best interests at that time and ordered that the parenting-time schedule remain unchanged, that TJK begin participating in therapy, and that the parties only communicate with one another respectfully and on a court-sanctioned communication platform. The court subsequently issued a supplemental order stating that defendant could request a review of parenting time "without further demonstration of change in circumstance or proper cause" after he participated in family therapy with TJK and completed an anger-management course to address his inappropriate communication with plaintiff.

In July 2023, plaintiff moved to enforce the trial court's order because defendant repeatedly violated the communication provisions of the order by sending her negative, inappropriate, and derogatory messages. The court granted the motion. Plaintiff moved for the same in February 2024 because defendant had again sent her inappropriate messages, and she additionally requested that defendant's parenting time be suspended entirely because his inappropriate communications with her were negatively affecting TJK's mental and emotional well-being. The court thereafter referred the case to a referee for an evidentiary hearing on custody and parenting time,[2] and in the interim, the court temporarily reduced defendant's parenting time to one overnight visit and two 30-minute virtual visits each month.

A referee thereafter conducted an evidentiary hearing on custody and parenting time, at which both parties testified, presented additional witnesses, and offered documentary evidence. Shortly after the hearing, the referee issued a written recommendation detailing her findings of fact and her conclusions regarding custody and parenting time. The referee found that TJK had an established custodial environment with plaintiff only and that, although the change from joint to sole legal custody requested by plaintiff would not alter that environment, plaintiff had not demonstrated by a preponderance of the evidence that her requested custody change was in TJK's best interests. Regarding parenting time, the referee found that a reduction in defendant's parenting time was in TJK's best interests. The referee ultimately recommended that the court maintain joint legal custody, permanently reduce defendant's parenting time to the lesser amount set forth in the court's prior order temporarily reducing defendant's parenting time, and order the parties to jointly participate in family therapy with TJK.

Plaintiff objected to the referee's recommendations regarding custody and the parties' joint participation in family therapy with TJK. The trial court subsequently held a hearing to address plaintiff's objections in August 2024, at which both parents repeatedly confirmed, in response to the court's questioning on the matter, that they had had a full opportunity to present evidence at

---

[2] The evidentiary hearing was also set to address the issue of child support. Plaintiff does not raise any challenge regarding child support on appeal.

the evidentiary hearing before the referee and that there was no need for a supplemental hearing to submit additional evidence or testimony.

In November 2024, the court, following its de novo review of the entire record, issued a written opinion and order adopting nearly all of the referee's factual findings, except for those regarding best-interests factors (b), (f), (j), and (*l*), MCL 722.23(b), (f), (j), and (*l*). The court also adopted the referee's recommendation regarding custody, but it did not adopt the referee's recommendation regarding parenting time. Rather, the court found that, based on its analysis of the best-interests factors, defendant's parenting time should not be permanently reduced as recommended, and it was instead in TJK's best interests for defendant's parenting time to be slightly increased from what it had been previously. The court ordered that defendant's parenting time be returned to what he was receiving prior to its order temporarily decreasing his parenting time—i.e., overnights on alternating Saturdays—with three of those weekends in the summer extended to span from Friday afternoon through Sunday evening. The court noted that the evidence demonstrated that TJK struggled with transitions between parenting time due to the parties' behavior, and the extended weekends during the summer would allow TJK "to relax and settle into the environment of [defendant]'s home before facing another parenting time exchange."

Plaintiff thereafter moved for reconsideration, arguing that the trial court erred by modifying parenting time because neither party objected to the referee's parenting-time recommendation and she was not given the chance "to present live evidence" to the court on the issue. The court denied plaintiff's motion, concluding that plaintiff's objections to select provisions of the recommendation did not obviate the court's duty to issue a parenting-time schedule in accordance with TJK's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

"In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Kuebler v Kuebler*, 346 Mich App 633, 652-653; 13 NW3d 339 (2023) (quotation marks and citation omitted); see also MCL 722.28. "This Court applies three standards of review in custody cases." *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 3 (quotation marks and citation omitted). The trial court's factual findings are reviewed under the great-weight-of-the-evidence standard. *Id*. A finding of fact is against the great weight of the evidence if "the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted). "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). Discretionary rulings, including custody and parenting-time decisions, are reviewed for an abuse of discretion. *Stoudemire v Thomas*, 344 Mich App 34, 42-43; 999 NW2d 43 (2022). "In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Kuebler*, 346 Mich App at 653 (quotation marks and citation omitted). Reviewing courts should defer to the trial court's superior ability to weigh evidence, assess credibility, and otherwise evaluate a child's best interests. *Sabatine v Sabatine*, 513 Mich 276, 285; 15 NW3d 204 (2024).

## III. LEGAL CUSTODY

Plaintiff first challenges the trial court's denial of her request for sole legal custody of TJK. Under MCL 722.27(1)(c), a party seeking to modify a custody arrangement must "first establish proper cause or a change of circumstances." *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003). On appeal, plaintiff concedes that there was no change of circumstances that would support revisiting the parties' custody arrangement, but she argues that there was proper cause to do so, and the trial court committed clear legal error by finding otherwise. The record, however, clearly reflects that both the referee and the trial court found that there *was* proper cause and/or a change of circumstances to revisit the parties' custody arrangement. And the court did, in fact, revisit the parties' custody arrangement—it simply concluded, after its analysis of the best-interests factors, that it was not in TJK's best interests to modify the arrangement from joint legal custody to plaintiff's sole legal custody.

To the extent that plaintiff challenges the merits of that ultimate decision, she has not shown that the court reversibly erred by concluding that joint legal custody was in TJK's best interests. When determining whether joint legal custody is in a child's best interests, a court must consider the best-interests factors set forth in MCL 722.23, as well as "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1). The parties' general inability and unwillingness to effectively communicate, alone, is insufficient to dispense with joint legal custody as an option; rather, the parties' relationship must have "irreconcilably broken down" to a point where they are completely "unable to cooperate and to agree generally concerning important decisions affecting the welfare of their" child. *Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020) (quotation marks and citation omitted); see also *id*. at 249-250 (holding that the trial court abused its discretion by awarding sole legal custody to the defendant-mother because the fact that the parties disagreed on some co-parenting decisions and their communications "were not civil" was insufficient under the statute to eliminate joint legal custody as an option).

In this case, plaintiff does not challenge any of the trial court's best-interests findings under MCL 722.23 and instead exclusively focuses on the parties' ability and willingness to cooperate and agree on co-parenting matters. We do not, however, see grounds to disrupt the trial court's assessment of that issue. As the court recognized, it is readily apparent that the parties generally dislike each other and struggle to communicate effectively and appropriately, with defendant having directed some particularly inappropriate communications toward plaintiff in the past. But the record as a whole does not clearly indicate that, contrary to the court's assessment, the parties are completely unable to cooperate and generally agree on major decisions regarding TJK's welfare. See *Bofysil*, 332 Mich App at 249-250. For instance, despite their communication difficulties, both parties completed a co-parenting class to improve their co-parenting communication for TJK's benefit, and they agreed to participate in family therapy with TJK to improve their co-parenting relationship and reduce TJK's anxiety regarding transitions between their parenting times. While, as plaintiff's arguments reflect, the record leaves room to disagree with the court's findings in this regard and its ultimate conclusion regarding custody, our review of those matters is governed by highly deferential standards—and on this record, plaintiff has not shown that "the evidence clearly preponderates in the opposite direction" of the trial court's findings, *Quint*, ___ Mich App at ___; slip op at 3, or that the court's conclusion was "palpably and grossly violative of fact and logic," *Kuebler*, 346 Mich App at 653. Accordingly, we do not

-4-

see reversible error in the trial court's decision to maintain joint legal custody between the parties rather than to award plaintiff sole legal custody.

## IV. PARENTING TIME

Plaintiff also argues that the trial court reversibly erred in its award of parenting time to defendant. According to plaintiff, the court violated the court rules and her right to due process by addressing parenting time and ultimately "changing" the referee's recommended schedule when neither party objected to that recommendation and the court had not notified the parties that it would be considering parenting time as a part of its de novo review. We disagree.

To start, the trial court did not err simply by opting not to follow the referee's recommendation regarding parenting time. It is well established that an FOC referee serves an investigative function and may only provide *recommendations* to the trial court, which then makes the final decision and is free to accept or reject the referee's recommendations in doing so. See, e.g., *Rose v May*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371605); slip op at 7 (explaining that the duties contemplated by the Friend of the Court Act (FCA), MCL 552.501 *et seq.*, generally "involve . . . the investigation and compilation of facts for use by the circuit court judge") (quotation marks and citation omitted); *McIntosh v McIntosh*, 282 Mich App 471, 475-477; 768 NW2d 325 (2009) (emphasizing that "[t]he ultimate resolution of any child custody dispute rests with the trial court" and that the court may "declin[e] to adopt the recommendation of the [referee's] report" and "arrive at its own custody decision on the basis of competent evidence presented at trial"). Indeed, MCR 3.215(E)(1)(c) expressly states that a referee "must make a recommendation for an order" to be submitted to the court for approval and that the referee's recommendation only becomes a final order "*[i]f the recommendation is approved by the court.*" (Emphasis added.) See also MCR 3.215(E)(1)(b) (requiring a "referee's recommended order" to include, in relevant part, "a signature line for the court to indicate its approval" and notice to the parties that the recommended order will become final only if it is first "approved by the court"); MCL 552.507(6) (providing that a court's de novo review of issues presented before a referee authorizes the court to make "*[a] new decision*" based entirely on the existing record, entirely on new evidence presented at a de novo review hearing, or a combination of both) (emphasis added).

As this authority makes clear, the referee's recommendations in this case on all of the matters before it were just that—recommendations—and the final decision as to all of them, including parenting time, lay with the trial court. And because a parenting-time determination must be made in accordance with a child's best interests, MCL 722.27a(1), a court must reject a referee's recommendation if—as here—the court determines that the recommendation is not in the child's best interests. Plaintiff has failed to demonstrate that a court may only do so if a party has objected to that recommendation.

Plaintiff asserts that, in making its parenting-time decision, the trial court violated MCR 3.215(F)(2), which required that she be given an opportunity "to present live evidence at [a] judicial hearing" on the issue. That court rule, however, expressly provides that a court is not required to allow additional evidence regarding a matter for which objections were not filed. MCR 3.215(F)(2)(a) (stating that a court may, in its discretion, "prohibit a party from presenting evidence on findings of fact to which no objection was filed"); see also MCL 552.507(5)(b) (providing that, during a court's de novo review, the parties must be afforded the opportunity to

offer evidence "[f]or findings of fact to which the parties have objected"). And in this case, plaintiff opted not to file any objection regarding parenting time, even though the referee's recommendation did not grant her the full relief she requested on that issue (i.e., complete suspension of defendant's parenting time). Furthermore, at the hearing regarding plaintiff's objections, the court expressly and repeatedly asked the parties whether either of them had anything they wished to supplement the record about, either through documentation or through testimony at a supplemental review hearing. While the hearing focused (understandably enough) on the issues to which plaintiff had opted to object, at no point did the court, in its questioning or otherwise, purport to foreclose plaintiff from raising or seeking to supplement the record on the parenting-time issue. Nor did plaintiff ever indicate any need or desire to do so. And even in the time since the court issued its final decision, plaintiff has never substantiated or explained in any detail—either in her motion for reconsideration below or now on appeal—what additional evidence she would have provided regarding parenting time that was not already presented at the evidentiary hearing before the referee.

For similar reasons, we fail to see how plaintiff lacked due notice and opportunity to be heard regarding parenting time such that she was denied her constitutional right to due process. See *Barretta v Zhitkov*, 348 Mich App 539, 555; 19 NW3d 420 (2023) ("Because the liberty interests at stake when a court seeks to limit or deny parenting time of custody are powerful, to satisfy constitutional due process standards, the state must provide the parents with fundamentally fair procedures.") (quotation marks and citation omitted). Plaintiff initiated the instant dispute regarding parenting time by seeking full suspension of defendant's parenting time. The court then referred the matter to the referee for an evidentiary hearing and, in the interim, temporarily reduced defendant's parenting time. At the evidentiary hearing before the referee, both parties were given full opportunity to present—and did present—ample testimony and documentary evidence regarding parenting time and why their respective requests were in TJK's best interests.

Following that hearing, the referee issued a recommendation, and both the recommendation itself and (as discussed) its underlying authority made clear that it was only a recommendation and that the final decision lay with the trial court. Plaintiff was then given full opportunity to object to the referee's recommendation, including as to parenting time, and was never prevented from raising arguments or submitting evidence as to that issue. And following the court's ultimate decision, plaintiff filed a motion for reconsideration focused on the parenting-time issue, which the court duly considered and addressed on its merits. Plaintiff fails to explain how, despite all this, her constitutional right to due process was violated. See *id*. We do not see any reversible error as to this issue.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman