*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

NICOLE SATTLER,

       Plaintiff-Appellant,

v

JAY TARJEFT,

       Defendant-Appellee.

UNPUBLISHED
May 2, 2024

No. 367461
Wayne Circuit Court
Family Division
LC No. 13-154523-DS

---

NICOLE SATTLER,

       Plaintiff-Appellant,

v

JAY TARJEFT,

       Defendant-Appellee.

No. 367462
Wayne Circuit Court
Family Division
LC No. 20-105882-DS

---

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

These consolidated appeals[1] are before this Court for the second time involving the same underlying custody and parenting-time dispute. In the previous appeal, this Court vacated orders awarding plaintiff full legal custody of the children and a favorable parenting-time schedule and remanded for further proceedings. *Sattler v Tarjeft*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2022 (Docket Nos. 358163 & 358164) ("*Sattler I*"). Following a new evidentiary hearing on remand, the trial court determined that it could not hold a full custody hearing because plaintiff failed to establish proper cause or a change in circumstances to consider

---

[1] *Sattler v Tarjeft*, unpublished order of the Court of Appeals, entered September 5, 2023 (Docket Nos. 367461 and 367462).

modifying custody with respect to the parties' oldest child, KT. In substantively identical orders entered in each case, the trial court (1) denied plaintiff's motion to modify custody, parenting time, and child support for KT; (2) ordered that the parties would share joint legal and physical custody of KT in accordance with a consent order entered in 2015; (3) awarded joint legal and physical custody of the parties youngest child, CT; (4) established a parenting-time schedule for both children; (5) ordered that the children would attend Gibraltar schools; and (6) awarded defendant attorney fees and costs. Plaintiff appeals these orders as of right. We affirm in part, vacate in part, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Lower court case number 13-154523-DS (the "2013 case") was initiated as an original action for child support for KT, and lower court case number 20-105882-DS (the "2020 case") was filed as an original action for custody, parenting time, and child support related to CT. As was true in the proceedings that led to *Sattler I*, the related cases proceeded as one but were not formally consolidated.

In the 2013 case, the trial court entered a consent order in November 2015 providing that the parties would have joint legal and physical custody of KT, with defendant's home as KT's primary residence. Plaintiff was awarded parenting time every Monday after school until the beginning of school on Wednesday and alternating weekends from Friday after school until Monday morning before school. The order also stated that KT would attend Gibraltar schools (the school district corresponding to defendant's residence) until further order of the court. The 2015 consent order did not address CT, who was not born until several months after its entry. Nevertheless, the parties generally conducted themselves as though the 2015 consent order applied to CT as well.

In February 2020, plaintiff moved to enforce and modify the 2015 custody order. Plaintiff sought an additional parenting-time day each week and asked the court to include CT in the modified order. Plaintiff later amended her motion to seek legal custody of both children. After the trial court determined that it did not have jurisdiction over CT in the 2013 case, plaintiff initiated the 2020 case with a complaint to establish custody, parenting time, and support for CT. After a four-day evidentiary hearing held in 2021, the trial court awarded plaintiff sole legal custody of both children and a favorable school-year parenting-time schedule. Acting as the children's legal custodian, plaintiff subsequently enrolled the children in Huron schools, where they attended school for the 2021-2022 and 2022-2023 school years.

Defendant appealed the trial court's orders as of right, leading to this Court's opinion in *Sattler I*. In that opinion, we concluded that the trial court's finding of proper cause and a change in circumstances to allow reconsideration of KT's custody was against the great weight of the evidence because the trial court improperly faulted defendant for maintaining a job that required him to rely on family-provided childcare. *Sattler I*, unpub op at 3-4. Because plaintiff had not met her threshold burden, we vacated the trial court's order modifying KT's custody and parenting time and declined to consider defendant's remaining arguments concerning KT. *Id.*

With respect to CT, the Court determined that the trial court erred by finding that the children had an established custodial environment with plaintiff only, which, in turn, caused the trial court to apply the incorrect burden of proof. *Id.* at 5-6. Moreover, several of the trial court's

best-interest findings were against the great weight of the evidence. *Id*. at 6-8. We also concluded that the trial court abused its discretion by granting plaintiff sole legal custody of CT and imposing the new parenting-time schedule, because plaintiff had not established by clear and convincing evidence that doing so was in CT's best interests when a majority of the best-interest factors favored the parties equally. *Id*. at 8. We emphasized that the trial court's primary concern was defendant's inability to provide necessary guidance and repeated its opinion that defendant could not be punished for maintaining employment when his work schedule and family-provided childcare did not impair his ability to provide guidance. *Id*. Lastly, we agreed with defendant that the parenting-time schedule selected by the trial court constituted an abuse of discretion because the best-interest factors mostly favored the parties equally, yet plaintiff received the vast majority of school-year parenting time, including parenting time on defendant's only nonwork day. *Id*. at 9.

From the first hearing held on remand,[2] it was apparent that the parties and trial court were uncertain how to proceed, which was exacerbated when the case was reassigned to a new judge. In interim orders entered in June 2023, the trial court formally vacated the 2021 orders at issue in *Sattler I* and adopted the provisions of the 2015 consent order as applicable to both children. Concerning parenting time, the order stated that plaintiff would exercise parenting time every Sunday evening until Tuesday evening, defendant would exercise parenting time every Tuesday evening until Thursday evening, and the parties would have parenting time from Thursday evening to Sunday evening on alternating weekends. Additionally, the court ordered that the children complete the 2022-2023 school year in Huron schools and thereafter attend Gibraltar schools consistent with the 2015 consent order.

On the first day of the evidentiary hearing on remand, the trial court held that plaintiff was required to establish proper cause or a change in circumstance on the basis of new facts that had not already been considered by this Court in *Sattler I*. When plaintiff's attorney made an offer of proof regarding matters that had changed since the last evidentiary hearing, the trial court interjected that the relevant time period would be since this Court issued its decision in *Sattler I*. When the parties returned to court to present their proofs, the parties had further discussion with the court regarding the relevant time period for the evidence. Ultimately, the trial court determined that only evidence arising after April 27, 2021—the last day of the previous evidentiary hearings— could be presented. After plaintiff confirmed that she had no further witnesses relevant to proper cause or a change in circumstances, the trial court stated that it would issue a written opinion on that matter and proceed from there as needed.

In the opinions and orders from which these appeals were taken, the trial court determined that plaintiff failed to establish proper cause or a change of circumstances to review custody and that it was, therefore, precluded from holding a child custody hearing. The court denied plaintiff's motion to modify custody, parenting time, and child support with respect to KT; awarded joint legal and physical custody of KT under the 2015 consent order; awarded joint legal and physical custody of CT; ordered parenting time consistent with the interim orders regarding parenting time; ordered that the children should attend Gibraltar schools; and awarded defendant his costs and attorney fees "incurred in defending this action for the second time." This appeal followed.

---

[2] Plaintiff applied for leave to appeal with the Michigan Supreme Court, which was denied for failure to persuade the Court of the need for review. *Sattler v Tarjeft*, 510 Mich 877 (2022).

## II. EVIDENTIARY LIMITATION ON REMAND

Plaintiff first argues that the trial court erred by limiting the scope of evidence that could be presented on remand. Although we disagree with plaintiff regarding custody and parenting time as it relates to KT, to the extent the trial court's ruling extended to CT as well, we agree with plaintiff that the trial court's error regarding CT requires appellate relief and remand for further proceedings.

### A. STANDARDS OF REVIEW

In matters governed by the Child Custody Act, MCL 722.21 *et seq.*, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington*, 329 Mich App at 570. In the context of child custody disputes, a trial court abuses its discretion when "the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Merecki v Merecki*, 336 Mich App 639, 645; 971 NW2d 659 (2021) (citation and quotation marks omitted). Questions of law are subject to review for clear legal error, which occurs when the trial court "incorrectly chooses, interprets or applies the law." *Id*. at 645 (citation and quotation marks omitted). Evidentiary issues are generally reviewed for an abuse of discretion, but preliminary legal questions affecting evidentiary rulings are reviewed de novo. *Nashal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018).

### B. EVIDENCE REGARDING KT

In plaintiff's initial 2020 motion, she asked the trial court to modify the parenting-time schedule to afford plaintiff one additional day of parenting time during the school week. Buried in plaintiff's supporting brief was an additional request that KT be allowed to transfer to Huron schools for fifth grade (the 2020-2021 school year). Plaintiff later amended her motion to request full legal custody, noting that she desired sole legal custody so she could place KT in Huron schools, which plaintiff believed was in KT's best interests. In other words, plaintiff was asking to modify KT's legal custody and parenting time.

The "overriding concern" of the Child Custody Act is to advance the best interests of the children at issue in a custody dispute. *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). One method of achieving that goal is to provide children with "a stable environment free of unnecessary and disruptive custodial modifications." *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 6. To that end, MCL 722.27 "imposes a gatekeeping function on the trial court to ensure the child's stability . . . ." *Liebman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017). More specifically, the trial court may only modify or amend a previous judgment or order "for proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). Consistent with the goal of promoting stability, the moving party "has the burden of proving by a preponderance of the evidence that either proper cause or a change of circumstances exists *before* the trial court can consider whether an established custodial environment exists (thus establishing the burden of proof) and conduct a

review of the best interest factors." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003).

In this case and before the first appeal, the trial court held a multiday evidentiary hearing in 2021, focusing first on the threshold question of proper cause or change in circumstances. The trial court found proper cause and a change in circumstances because there was "an escalation and expansion of an already existing bad circumstance, where Defendant is hardly present." The trial court explained that there was "proper cause and a change in circumstances relevant to [best-interest factor (b)], specifically the guidance portion of the factor," as well as best-interest factor (d). The trial court was primarily concerned that defendant's work schedule left him unavailable to give the children guidance during a significant portion of his parenting time and noted that he typically left the children with paternal family members without knowledge of where and what the children were doing.

We later determined in *Sattler I* that the trial court erred by finding proper cause and a change of circumstances because the trial court had, in effect, improperly faulted defendant for maintaining a job that required him to rely on family-provided childcare while at work. *Sattler I*, unpub op at 3-4. We noted that none of the other circumstances identified by the trial court rose to the level of proper cause or a change of circumstances sufficient to engage in a full analysis of whether to modify KT's custody. *Id*. at 4. Consequently, we vacated the trial court's order modifying KT's custody and parenting time and deemed it unnecessary to address any other issues relating to KT because plaintiff did not meet her initial threshold burden. *Id*. at 4.

Plaintiff's argument that the trial court erred by limiting the scope of the evidence on remand it would consider with respect to proper cause and change of circumstances presupposes that she was entitled to a second opportunity to meet her threshold burden. But *Sattler I* did not authorize or require further proceedings to expand the record concerning KT. Citing *Vodvarka*, plaintiff contends that trial courts must generally consider evidence of the circumstances existing at the time of and before the last custody order to properly evaluate whether there has been a sufficient change in circumstances, because the previously existing circumstances are relevant for "comparison purposes." *Vodvarka*, 259 Mich App at 514. Plaintiff is correct insofar as the *Vodvarka* Court expressed reservation about the frequency in which circumstances predating the last custody order could rise to the level of proper cause but did not foreclose that possibility and, indeed, found earlier events sufficient in that instance. *Id*. at 515-516. Plaintiff's reliance on *Vodvarka*, however, is misplaced.

The plaintiff in *Vodvarka* filed a paternity complaint to establish the defendant as the father of her child. *Id*. at 502. After genetic testing, the defendant signed an acknowledgment admitting his paternal relationship to the child. *Id*. The next day, a prosecutor submitted a proposed order requiring the defendant to pay certain costs and child support, awarding the plaintiff custody of the child, and awarding the defendant unspecified "reasonable" parenting time. *Id*. at 502-503. The trial court entered the order the same day without a hearing. *Id*. at 502. Immediately thereafter, the defendant petitioned for custody. *Id*. at 503. The plaintiff moved to dismiss the custody petition on the basis that the defendant could not establish proper cause or a change in circumstances to support reviewing the custody order. *Id*. at 504-505. The trial court granted the plaintiff's motion to dismiss reasoning that there was no change of circumstances in the limited time frame between entry of the custody order and the filing of the defendant's motion. *Id*. at 506-507. After establishing the now oft-cited standards regarding proper cause and change in

circumstances, this Court opined that *Vodvarka* involved the rare situation in which events that were known to the parties before entry of the last custody order would be significant enough to constitute proper cause. *Id*. at 515. Of great importance to this Court's analysis was the fact that the procedure leading to entry of the custody order entirely precluded the defendant from presenting evidence relevant to an initial custody determination and left the trial court without "any facts regarding which possible custodial arrangement would be in the child's best interests." *Id*. at 515-516. Moreover, the defendant proffered evidence of allegations that were "essentially undisputed and directly related to plaintiff's parenting skills . . . ." *Id*. at 516-517. We ultimately concluded that there was proper cause to review custody, such that the trial court was "obligated to review the best interest factors and determine which parent (or perhaps both parents) should be the child's primary caregiver." *Id*.

*Vodvarka* is distinguishable because plaintiff here had a full opportunity to establish proper cause or a change in circumstances in 2021. That fact is not altered by this Court's subsequent determination that the trial court's finding of proper cause and a change in circumstances was against the great weight of the evidence. This was simply not a situation in which the movant's ability to establish the threshold requirement was impaired by erroneous rulings or procedure as in *Vodvarka*. Furthermore, *Sattler I* reached the opposite appellate disposition. While *Vodvarka* found that the record supported a finding of proper cause such that the child's custody should have been reviewed, *id*. at 515-517, *Sattler I* concluded that the trial court erred by finding proper cause and a change of circumstances to warrant further consideration of plaintiff's request to modify KT's custody. *Sattler I*, unpub op at 3-4. Considering the different outcomes involved, *Vodvarka* offers no guidance as to the scope of the proceedings on remand following an appellate determination that the moving party did not satisfy the threshold burden imposed by MCL 722.27(1)(c).

Instead, this issue is governed by the law-of-the-case doctrine, under which "the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *In re Berrien Co Treasurer for Foreclosure*, 341 Mich App 114, 129; 988 NW2d 816 (2022) (citations and quotation marks omitted). "The appellate court's decision likewise binds lower tribunals because the tribunal may not take action on remand that is inconsistent with the judgment of the appellate court." *Id*. (citation and quotation marks omitted). "Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. (citation and quotation marks omitted).

This Court determined in *Sattler I* that plaintiff "did not meet her burden of proving by a preponderance of the evidence that proper cause or a change of circumstances existed to proceed to an analysis of whether plaintiff's proposed modification of KT's custody was in her best interests." *Sattler I*, unpub op at 4. The implication of this conclusion is that plaintiff's motion concerning KT should have been denied, as no additional action may be taken on a motion to modify custody when the movant does not meet his or her threshold burden. See *Pennington*, 329 Mich App at 571 ("If the party seeking to change custody does not prove by a preponderance of the evidence either proper cause or a change of circumstances, the trial court is not authorized by the Child Custody Act to revisit an existing custody decision and engage in a reconsideration of the statutory best-interest factors."). And as a practical matter, because *Sattler I* vacated the 2021 order that modified KT's custody and parenting time, KT's custody and parenting time remained controlled by the last order establishing those matters—the 2015 consent order. Because plaintiff

was not entitled to further litigate the question of proper cause or change in circumstances supporting her 2020 motion, the trial court did not err when it limited the scope of the hearing on remand.

## C. EVIDENCE REGARDING CT

After the trial court determined that it did not have jurisdiction over CT in the 2013 case, plaintiff filed a complaint to establish custody, parenting time, and support for CT in the first instance, thus initiating the 2020 case. The evidentiary hearing that took place in 2021 covered not only plaintiff's motion to modify the 2015 consent order, but also her complaint to establish custody, parenting time, and support for CT. On the basis of evidence presented at that hearing, the trial court determined that both children had an established custodial environment with plaintiff only, such that the preponderance-of-the-evidence burden of proof applied to the custody issues. The trial court then found that best-interest factors (a), (d), (e), and (g) favored the parties equally; factors (b), (c), (h), (k), and (*l*) favored plaintiff; and factors (f) and (j) favored neither party. The trial court also considered KT's preferences under factor (i), but not CT's preferences because of his young age. The trial court determined that plaintiff demonstrated by a preponderance of the evidence that it would be in CT's best interests to award plaintiff sole legal custody and "primary residence . . . for school purposes." Concerning parenting time, the trial court established a school-year schedule and a summer schedule. During the school year, plaintiff was awarded parenting time from Sunday morning until Thursday morning and defendant was awarded parenting time from Thursday after school until Sunday morning. During the summer, the parties were to revert to the "2/2/5/5 schedule" they were previously exercising.

In defendant's appeal from the trial court's 2021 decision, we held that the trial court's finding of an established custodial environment with plaintiff only was against the great weight of the evidence and that the error caused the court to apply the incorrect burden of proof in evaluating CT's best interests. *Sattler I*, unpub op at 5-6. Additionally, we agreed with defendant that the trial court erred with respect to best-interest factors (b), (c), (h), and (*l*). *Id*. at 6-8.

> Plaintiff failed to establish by clear and convincing evidence that it was in CT's best interests to award her sole legal custody and primary physical custody. Although best-interest findings are subject to harmless error review, see *Brown v Brown*, 332 Mich App 1, 26; 955 NW2d 515 (2020) (finding error regarding one factor harmless when remaining factors overwhelmingly supported decision), a majority of the factors favored both parties. The trial court's primary concern was defendant's alleged inability to provide necessary guidance. However, defendant's work schedule and family-provided childcare did not hinder his ability to provide guidance to his children, and he should not be punished for maintaining a steady job and income.
>
> * * *
>
> [B]ased on our conclusion that plaintiff failed to meet her burden that sole custody was in CT's best interests by clear and convincing evidence, we conclude that the trial court abused its discretion by awarding her sole legal custody." [*Sattler I*, unpub op at 8-9.]

We also held the court abused its discretion by selecting a schedule that afforded plaintiff much of the Sunday parenting time, despite evidence that Sunday was defendant's only nonwork day and a statutory requirement that parenting time be ordered in a manner reasonably calculated to promote a strong parent-child relationship. *Id*. at 9. *Sattler I*, therefore, vacated the order establishing CT's custody and parenting time and remanded for further proceedings. *Id*. at 10.

Notably, in stark contrast to the procedural posture in the 2013 case, the trial court's 2021 decision established CT's custody and parenting time for the first time. Its ability to do so is governed by MCL 722.27(1)(a), which authorizes a circuit court presiding over a child custody dispute to "[a]ward the custody of the child to 1 or more of the parties involved" and does not require a preliminary showing of proper cause or change in circumstances. See *Thompson v Thompson*, 261 Mich App 353, 360; 683 NW2d 250 (2004) (discussing distinction between an initial award of custody and modification of an existing order). Thus, while further proceedings on plaintiff's 2020 motion concerning KT were barred on the basis of her failure to satisfy her threshold burden, plaintiff's failure to meet her burden with respect to establishing CT's custody and parenting time in the first instance did not have the same effect of resolving CT's custody and parenting time. As noted earlier, KT's custody and parenting time was governed by the 2015 consent order in the wake of *Sattler I*, but CT's custody and parenting time had never been established in an earlier final order. Further proceedings were, therefore, necessary for that purpose.

The trial court's written order reflecting the trial court's evidentiary ruling limited the evidence for purposes of proper cause or change in circumstances to specific topics that it believed had not been addressed in the earlier 2021 proceedings and thereafter reviewed by this Court in *Sattler I*. It also stated that "all evidence submitted shall pertain to occurrences after the April 27, 2021 evidentiary hearing before the Court[.]" However, no limitations were actually imposed on the evidence regarding CT, because the trial court resolved the proceedings on remand after plaintiff concluded her proofs relative to proper cause or change in circumstances to modify KT's custody, without presentation of any evidence regarding CT. In doing so, the trial court committed clear legal error on a major issue.

When an appellate court remands a child custody matter for reevaluation, the trial court "should consider up-to-date information," including the child's "current and reasonable preferences," where the child has been living during the appeal, and "any other changes in circumstances arising since the trial court's original custody order." *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994). Yet the trial court awarded joint legal and physical custody of CT and established a parenting-time schedule without compliance with basic requirements of the Child Custody Act, such as a redetermination of CT's established custodial environment, see *Bofysil v Bofysil*, 332 Mich App 232, 242-243; 956 NW2d 544 (2020) (identifying the necessity of determining established custodial environment before making a custody determination and explaining associated procedural implications), or evaluation of the statutory best-interest factors. See *id*. at 244 ("A trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved."). Consequently, we must vacate the trial court's order in Docket No. 367462 and again remand for further proceedings.

In the interest of avoiding further unnecessary delay in establishing an initial custody order for CT, we will clarify the procedure on remand. The trial court must first consider whether and with whom CT currently has an established custodial environment. *Id*. at 242. This issue will

-8-

necessarily require the trial court to consider up-to-date information, as the pertinent facts may have changed since evidence was presented on that issue in 2021. *Butters*, 510 Mich at 1097; *Fletcher*, 447 Mich at 889. Once the trial court determines CT's established custodial environment, it must determine whether plaintiff's proposed custodial arrangement and parenting time would alter that environment. *Bofysil*, 332 Mich App at 243. As this Court has explained,

> If a proposed change would modify the child's established custodial environment, the proponent must demonstrate by clear and convincing evidence that the proposed change is in the child's best interests. If the proposed change would not modify the established custodial environment, the proponent need only demonstrate by a preponderance of the evidence that the proposed change is in the child's best interests. If a child has an established custodial environment with both parents, neither parent's custody may be disrupted absent clear and convincing evidence that the change is in the child's best interests. [*Bofysil*, 332 Mich App at 243 (citations omitted).]

Lastly, with the appropriate evidentiary burden in mind, the court must evaluate the factors outlined in MCL 722.23 to determine CT's best interests. *Thompson*, 261 Mich App at 363. Again, this analysis should consider up-to-date information regarding matters that have occurred during the appellate process. *Fletcher*, 447 Mich at 889. Because the trial court will be tasked with deciding CT's custody, it must make findings regarding every best-interest factor. *Shade v Wright*, 291 Mich App 17, 31; 805 NW2d 1 (2010); see also *Ireland v Smith*, 451 Mich 457, 468-469; 547 NW2d 686 (1996) (clarifying that, on remand following error with respect to one best-interest factor, the trial court must "review the entire question of custody" and reconsider all best-interest factors). The trial court's findings and conclusions regarding the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties," but "must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

Moreover, in the event the trial court is inclined to again limit the scope of evidence that may be presented on remand, it is free to do so. Despite multiple appellate decisions recognizing the need to consider up-to-date information in child custody remands, we are aware of no authority that compels a trial court to allow a party to present the same proofs that have already been received in earlier proceedings. To the contrary, our Supreme Court has left trial courts with discretion to "conduct whatever hearings or other proceedings are necessary to allow it to make an accurate decision concerning a custody arrangement that is in the best interests of [the child]." *Ireland*, 451 Mich at 469. The Supreme Court also approved closing the record with respect to events that occurred before the original evidentiary hearing, but cautioned that the trial court should "reconsider the facts adduced at th[e] hearing" in light of errors identified on appeal. *Id*. at 468 n 11. The Court did not, however, believe it would be "appropriate" to receive "additional proofs" regarding events that occurred before the previous evidentiary hearing. *Id*. Thus, consistent with *Ireland*, the trial court may limit the evidence to matters that have arisen since the time of the 2021 evidentiary hearings, though it must still consider the evidence adduced in the earlier proceedings to the extent it is relevant to evaluating CT's custody and parenting time.

Plaintiff contends that the foregoing statements from *Ireland* regarding the scope of proofs on remand should not be applied in this instance because the Michigan Supreme Court presumed

that the trial court would necessarily be familiar with the facts of the original custody hearing—a presumption that is untrue as a result of a new judge being assigned to this case on remand from *Sattler I*. Plaintiff further opines that imposing a temporal limitation on the evidence in these circumstances would be contrary to the rationale for remanding articulated in *Fletcher*, 447 Mich at 889-890:

> Our disposition of this case recognizes that trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests.

According to plaintiff, a trial judge's ability to see and hear witness testimony firsthand is of such importance that a newly assigned judge cannot simply rely on an appellate court's view of the record. Nor, in plaintiff's opinion, could a newly assigned judge appreciate the nonverbal cues that affect witness credibility from reviewing extensive transcripts, which a "busy trial judge" could not possibly do in any event. We disagree.

It is not uncommon for a case to proceed before more than one judge, especially when the case involves a subject matter like child custody that regularly leads to protracted litigation over the course of many years. In such instances, newly assigned judges are able to apprise themselves of the case history by reviewing the record. Although a written record does not convey several factors relevant to evaluating credibility, cf. *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 519; 679 NW2d 106 (2004) ("The credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth") (quotation marks and citation omitted), the substance of the testimony can still be telling as to that issue. Moreover, unlike an appellate court, a newly assigned judge is not limited to considering the existing record. Trial courts have several available tools that make them well suited to weigh evidence and evaluate credibility, such as the ability to hear and elicit testimony, observe witnesses, interview children, and "invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests." *Fletcher*, 447 Mich at 890. Although the newly assigned judge in this case will not have the benefit of witnessing the former testimony firsthand, the judge has already observed the parties' conduct in open court and as witnesses in the recent remand proceedings and will have additional opportunities to do so on remand. Coupled with a thorough review of the record from the 2021 proceedings, there is no persuasive reason to conclude that the newly assigned judge will be unable to reach a fair and accurate decision without allowing plaintiff to present cumulative proofs regarding events and facts that are already a matter of record.

### III. DUE PROCESS

Next, plaintiff argues that the trial court's evidentiary limitation violated her right to due process. We disagree.

### A. STANDARDS OF REVIEW

-10-

An issue is generally preserved for appellate review if it was raised before or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Moreover, to effectively preserve an issue, "the same basis for the error claimed on appeal" must have been "brought to the trial court's attention." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-3. Plaintiff opposed the trial court's evidentiary ruling on multiple grounds unrelated to due process; thus, plaintiff did not properly preserve her claim of constitutional error for review.

Plaintiff contends that this issue can be reviewed for plain error, but this Court has clarified that applying the plain-error rule developed in criminal caselaw to civil appeals contradicts binding Supreme Court precedent. See *Tolas Oil & Gas*, ___ Mich App at ___; slip op at 3-5. The Court may, however, "overlook" a litigant's failure to preserve an issue, thus permitting review of an unpreserved claim of error, "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). Because due-process issues involve a question of law, *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009), and the relevant facts are a matter of record, we will review plaintiff's unpreserved claim for plain error.

## B. ANALYSIS

"The basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Notably, plaintiff does not suggest that she was without notice of the evidentiary hearing. Rather, plaintiff's only complaint is that the last-minute rulings limiting the evidence she could present "robbed" her of due process. While not clearly articulated, we infer that plaintiff believes the timing of the trial court's ruling deprived her of a meaningful opportunity to be heard.

"The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004) (quotation marks and citation omitted). Plaintiff was fully aware that her request to modify KT's custody and parenting time and establish custody and parenting time with respect to CT would be heard by the trial court at the time she appeared for the evidentiary hearing. Indeed, plaintiff's attorney inquired whether she should begin with evidence limited to proper cause or change in circumstances as the parties had done in the 2021 proceedings, or whether it would be a single hearing that encompassed best-interests evidence as well. This Court can infer from this question that plaintiff was prepared to present all the evidence she believed was admissible and relevant—including evidence concerning matters that arose after the 2021 evidentiary hearing. Limiting the evidence that could be presented may have dealt a blow to plaintiff's strategy, but it did not impair her ability to present nonduplicative evidence.

Moreover, while plaintiff maintains that the evidentiary ruling came as a complete shock to her, defendant argued in his trial brief that plaintiff could only rely on matters that arose after the previous custody hearing. In support of his position, defendant quoted from *Ireland*, which supports closing the record relative to events predating the original evidentiary hearing. This portion of defendant's trial brief dispels any suggestion that plaintiff had no reason to anticipate the trial court's ruling on that matter. To the extent plaintiff had compiled very little evidence that

-11-

would fall within the appropriate scope of the remand, as outlined in *Ireland*, plaintiff's lack of preparation does not establish a due-process violation. See *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 674-675; 997 NW2d 511 (2022).

At any rate, even if we believed that the trial court's last-minute ruling had constitutional implications, any error that occurred was harmless. See *id*. at 666. As already stated, plaintiff was not entitled to further litigate the question of proper cause or change in circumstances to modify KT's custody on remand after we determined in *Sattler I* that plaintiff did not meet her burden concerning that issue. Thus, any improper limits imposed on a hearing to which plaintiff had no entitlement were harmless. And assuming the trial court intended to limit the evidence concerning CT in the same manner, that decision had no effect on the outcome because the trial court erroneously ruled on CT's custody and parenting time without any updated evidence or findings required by the Child Custody Act. As a result of that error, no temporal limitations were actually applied to the evidence regarding CT, thereby rendering any error harmless as to CT as well.

## IV. CHOICE-OF-SCHOOLS DISPUTE

Plaintiff next argues that the trial court erred by failing to hold a *Lombardo*[3] hearing or properly evaluate which school district would serve the children's best interests. We agree.

## A. STANDARDS OF REVIEW

In matters governed by the Child Custody Act, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington*, 329 Mich App at 569-570, quoting MCL 722.28. Questions of law are subject to review for clear legal error, which occurs when the trial court "incorrectly chooses, interprets or applies the law." *Merecki*, 336 Mich App at 645 (citation and quotation marks omitted).

## B. ANALYSIS

When parents share joint legal custody, they "share decision-making authority as to the important decisions affecting the welfare of the child." *Pierron*, 486 Mich at 85, quoting MCL 722.26a(7)(b) (quotation marks omitted). "However, when the parents cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child." *Pierron*, 486 Mich at 85.

> When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment. The established custodial environment is the environment in which over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. While an important decision affecting the welfare of the child may well require adjustments in the parenting time schedules, this does not necessarily mean that the

---

[3] *Lombardo v Lombardo*, 202 Mich App 151; 507 NW2d 788 (1993).

established custodial environment will have been modified. If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed. The court may not change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. [*Pierron*, 486 Mich at 85-86 (quotation marks and citations omitted).]

On the other hand, when a child's established custodial environment will not be altered by the decision, the moving party need only "prove by a preponderance of the evidence that the proposed change of schools would be in the best interests of the children, using the best-interest factors identified in MCL 722.23." *Id*. at 89-90. That said, *Pierron* recognized that "the best-interest factors are geared toward general custody determinations, and many of these factors are simply irrelevant to particular 'important decisions' affecting the welfare of a child." *Id*. at 90. Thus, "if the trial court determines that a particular factor is irrelevant to the immediate issue, it need not make substantive factual findings concerning the factor beyond this determination, but need merely state that conclusion on the record." *Id*. at 91.

Preliminarily, we reiterate that the orders challenged in *Sattler I* resolved two matters. The first was plaintiff's November 2020 amended motion requesting full legal custody of KT, primary residence status, modification of KT's parenting time during the school year, and other relief not pertinent to this issue. The second matter was plaintiff's initial complaint concerning CT, wherein she sought joint physical custody, sole legal custody, primary residence, and child support. Within plaintiff's amended motion, she explained that she sought sole legal custody of the children so she could place KT in the school near plaintiff's home. CT was not yet in school when plaintiff filed the amended motion, but the same reasoning presumably applied to him. Thus, by denying plaintiff's motion for lack of proper cause or change in circumstances and awarding the parties joint legal custody of CT, the trial court's decision regarding legal custody of both children did, in fact, resolve the school issue in the context it was actually presented by plaintiff in the underlying motion and complaint. This does not end the inquiry, however.

In *Bowers v VanderMeulen-Bowers*, 278 Mich App 287; 750 NW2d 597 (2008), the parties were originally awarded joint legal custody of their child at the time of their divorce, but physical custody was awarded to the plaintiff only. *Id*. at 290. The plaintiff later moved for sole legal custody. *Id*. On the basis of the defendant's representation that the plaintiff's proposed move implicated the 100-mile rule, the trial court entered an ex parte temporary restraining order barring the plaintiff from removing the child from his school or changing the child's residence. *Id*. The trial court ultimately determined that the plaintiff's proposed relocation did not implicate the 100-mile rule and, therefore, vacated the restraining order. *Id*. at 292. The trial court did not rule on the prospective change in schools, but noted that the parties were free to return to court on that matter if they were unable to reach an agreement. *Id*.

On appeal, we agreed with the defendant's argument that the trial court abused its discretion by vacating the temporary restraining order without first conducting a hearing regarding whether the change in schools would be in the child's best interests. *Id*. at 295. Although the defendant had not formally moved for a hearing regarding the disagreement, we found it noteworthy that her pleadings and on-the-record statements clearly alerted the trial court to the fact that the defendant did not agree with the change in school that would arise from the move and that

it was unlikely the parties could resolve their disagreement on their own. *Id*. at 296. This Court further explained:

> [T]he fact that [the plaintiff] could properly move [the child's] legal residence does not relieve a trial court of its duty to resolve disputes regarding important decisions affecting the welfare of a child according to the best interests of the child. By vacating the temporary restraining order, the court implicitly authorized [the plaintiff] to make the change in school districts—even if on a temporary basis— without examining whether that change was in [the child's] best interest. This decision did not fall within the range of reasonable and principled outcomes. The court should have modified the temporary restraining order to permit [the plaintiff's] move while maintaining the prohibition on the change in schools pending resolution of the dispute. For this reason, we reverse the court's decision to vacate the temporary restraining order and remand for a hearing on whether the change in school districts is in [the child's] best interest. [*Id*. at 296-297 (citation omitted).]

The same reasoning is equally applicable to the present case. The pertinent portion of plaintiff's original motion, filed in February 2020, sought only an increase in her weekday parenting time. Despite failing to include this issue in her formal request for relief, plaintiff's brief further stated that she wanted KT to transfer to Huron schools at the conclusion of the then-current school year. Plaintiff later amended her motion to seek sole legal custody in order to facilitate the change in schools. The trial court granted plaintiff's request in 2021, awarding her full legal custody of both children and "primary residence of both minor children for school purposes." Although this Court ultimately vacated those decisions, *Sattler I*, unpub op at 9-10, plaintiff enrolled the children in Huron schools in the interim.

At the hearing held on remand, defendant's attorney advised the court that defendant's primary concerns at that juncture were legal custody and the children's schools, which changed as a result of the 2021 decisions. The trial court encouraged the parties to resolve their disagreements on their own, but indicated that it would schedule everything for hearing. A few months later, defendant's attorney argued that only matters concerning CT were properly before the court on remand. He further opined that it was in CT's best interests to attend Gibraltar schools and for the parties to share joint legal custody and equal parenting time. Defendant's attorney took the position that the 2015 consent order, which contained a provision requiring KT to attend Gibraltar schools, would be controlling as to KT and should be applied to CT as well until the trial court ordered otherwise. Plaintiff argued that an interim order "as it relates to [the children's] custody, parenting time and schooling decision" was necessary and that defendant's concerns regarding school enrollment could be "hashed out at our evidentiary hearing . . . ." The trial court agreed that the 2015 order was controlling after *Sattler I*, but was unwilling to order KT to change schools with only approximately two months remaining in the school year. Opining that it would be best for the children to remain together, the court ordered that the 2015 order would be applied to CT as well. In the written order reflecting its decision, the trial court expressly directed the children to complete the 2022-2023 school year in Huron and thereafter return to Gibraltar schools in accordance with the 2015 consent order. At a later review hearing, plaintiff asked the trial court to schedule "trial" on an expedited matter to ensure that the dispute regarding the children's school could be resolved before the beginning of the 2023-2024 school year, and the trial court agreed to schedule the case for hearing in August 2023.

-14-

As the date of the evidentiary hearing approached, plaintiff clarified her requests concerning parenting time and legal custody. Plaintiff maintained that she should be awarded sole legal custody so she could keep the children in Huron schools and that if the court did not award her sole legal custody, it should still order the children to continue attending Huron schools. Defendant's trial brief likewise addressed his belief that the children would be better served by attending Gibraltar schools. Finally, in the discussions regarding the scope of the evidentiary hearing and permissible evidence, the parties and trial court continued to address matters concerning which school the children should attend. Plaintiff specifically asserted that "if the parents have a dispute on what school children should attend, . . . they are entitled to have a *Lombardo* hearing on that, which is exactly what we need to have at this time." Later, in her opening statement, plaintiff reminded the court that the hearing was being held to address her "motion for change of custody, parenting time, and selection of schools for the minor children . . . ."

Although the matters before the trial court on remand stemmed from a motion and complaint that did not specifically request a *Lombardo* hearing, the same was true in *Bowers*, where the school dispute arose in the context of the defendant's ex parte motion for a temporary restraining order predicated on a different legal question. *Bowers*, 278 Mich App at 290-292. And as in *Bowers*, the parties' positions, as reflected in court filings and statements at various hearings, made it readily apparent that they could not agree on where the children should attend school. *Id*. at 296-297. The foregoing procedural history is sufficiently analogous to *Bowers* that we likewise conclude the trial court was required to resolve the choice-of-schools dispute in accordance with established law regarding resolution of important decisions affecting a child's welfare. See *id*. at 297.

The evidentiary hearing held on remand was limited to an inquiry regarding proper cause or a change in circumstances to modify KT's custody, and the trial court's findings related to that issue only. The trial court's decision did not reach any of the matters that govern a choice-of-schools dispute, such as the children's established custodial environments, whether a change in the children's school would alter those environments, and analysis of the relevant best-interest factors. See *Pierron*, 486 Mich at 85-86, 90-91. Therefore, the trial court clearly erred when it ordered the children to attend Gibraltar schools. See *Bowers*, 278 Mich App at 297.

Defendant raises one other issue that merits consideration. According to defendant, plaintiff's request to change the children's schools would have failed in any event because she did not establish proper cause or a change of circumstances for such a change. Defendant opines that a preliminary showing was required in this instance because the 2015 consent order stated that KT would attend school in Gibraltar until further order of the court. In *Marik v Marik*, 325 Mich App 353; 925 NW2d 885 (2018), we concluded that the trial court was *not* required to find proper cause or a change of circumstances before considering a request to change schools, but noted that the threshold inquiry was unnecessary because "there was no prior order regarding the children's enrollment in school . . . ." *Id*. at 363 & n 2. Following that reasoning, because a previous order has already established KT's school district, we agree that plaintiff must prove proper cause or a change in circumstances before the trial court is authorized to modify the existing order with respect to this issue. *Id*.; see also MCL 722.27(1)(c) (authorizing a trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances"). Because CT's school district has not been decided in a properly entered earlier order, the proper

cause or change in circumstances inquiry is not applicable to him. *Marik*, 325 Mich App at 363 & n 2.

However, we disagree with defendant that plaintiff should not be afforded appellate relief for failure to carry her threshold burden as to this issue on remand. Although the trial court found that plaintiff had not proven proper cause or a change of circumstances, this finding was specific to the initial burden required to review custody. As binding precedent commands in the context of considering a modification of custody, the trial court required plaintiff to prove proper cause or a change in circumstances under the standards outlined in *Vodvarka*. But when modification of an existing order will not alter a child's established custodial environment, the threshold inquiry is less demanding. Cf. *Marik*, 325 Mich App at 368 ("[T]he very normal life change factors that *Vodvarka* finds insufficient to justify a change in custodial environment are precisely the types of considerations that trial courts should take into account in making determinations regarding modification of parenting time."); *Kaeb v Kaeb*, 309 Mich App 556, 570-571; 873 NW2d 319 (2015) (applying a "lesser, more flexible, understanding of 'proper cause' or 'change in circumstances' " to a motion to modify or amend a condition on parenting time because a modification of that nature is unlikely to affect established custodial environment). There is no indication that the trial court considered whether there was proper cause or a change in circumstances to modify the 2015 consent order with respect to KT's school specifically or that it recognized plaintiff's burden of proof in that context may have been lower if the change of school would leave KT's existing established custodial environment intact. Moreover, the trial court's evidentiary rulings were focused on KT's custody, without recognizing that a threshold inquiry was required with respect to the dispute over KT's school as well. Plaintiff, therefore, did not have a full opportunity to present evidence on this issue and should not be precluded from doing so on remand.

Defendant also contends that plaintiff should be precluded from presenting evidence of the relative academic merits of the Gibraltar and Huron school districts. While the trial court was permitted to limit the evidence that may be presented on remand, the relative merits of the school districts at issue is not an "event" that predates the proceedings that have already been held in this case. Defendant faults plaintiff for failing to present such evidence in 2021, but the scope of these proceedings has shifted since that time inasmuch as the litigation regarding KT is now focused specifically on the choice-of-schools dispute. Moreover, even if plaintiff had presented evidence concerning the relative academic standing of each school in 2021, that information would presumably be stale by the time the trial court reaches this issue again on remand.

## V. ATTORNEY FEES

Lastly, plaintiff argues that the trial court abused its discretion by awarding defendant attorney fees and costs. We agree.

## A. STANDARDS OF REVIEW

"This Court reviews a trial court's award of attorney fees for an abuse of discretion." *Kostreva v Kostreva*, 337 Mich App 648, 673; 976 NW2d 889 (2021). "Where attorney fees are concerned, an abuse of discretion occurs where the result lies outside the range of reasonable and principled outcomes." *Id*. "Any findings of fact on which the trial court bases an award of attorney

fees are reviewed for clear error, but questions of law are reviewed de novo." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005) (citations omitted).

## B. ANALYSIS

Defendant requested attorney fees under MCR 3.206(D) and MCL 600.2591, reasoning that an award of attorney fees was appropriate because plaintiff's continued pursuit of the same issues caused him to incur substantial attorney fees, while all plaintiff's living expenses and attorney fees were paid by her significant other. Defendant emphasized that he and plaintiff were not on "equal financial footing," and plaintiff's litigation strategy was repetitive and frivolous in light of this Court's decision in *Sattler I* and the Supreme Court's denial of plaintiff's application for leave to appeal from *Sattler I*. According to defendant, each of these decisions supported joint legal and physical custody.

"The general American rule is that attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary." *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004) (quotation marks and citation omitted). Under MCR 3.206(D):

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

Likewise, under MCL 600.2591, recovery of attorney fees is proper when the court determines that a civil action or defense was frivolous. *Bauer-Rowley v Humphreys*, 344 Mich App 52, 59; 998 NW2d 721 (2022). An action may be deemed frivolous if at least one of the following is established:

> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a)(*i*) through (*iii*).]

The trial court awarded defendant "his costs and attorney fees incurred in defending this action for the second time," but offered no further explanation as to the legal basis for its award.

It is, therefore, unclear which exception to the American rule the trial court relied on to grant defendant's request for attorney fees.

In *Reed*, 265 Mich App at 164-165, the trial court granted attorney fees to the plaintiff in a domestic-relations action on the basis of a common-law exception that permits an award of attorney fees "where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." (Quotation marks and citation omitted.) The trial court justified its ruling by finding that the defendant had caused the litigation to extend for almost three years. *Id.* at 165. The Court held that the trial court abused its discretion in that regard because its explanation was "too general to permit meaningful appellate review," and it failed to make factual findings that would support application of the common-law exception. *Id.* at 164-165. *Reed* demonstrates, therefore, that an award of attorney fees that is unsupported by necessary factual findings necessarily constitutes an abuse of discretion.[4] Because the trial court in this case likewise failed to make factual findings that would support an award of attorney fees under the court rule or statute cited by defendant, its award of attorney fees was outside the range of reasonable and principled outcomes, and we vacate the award.

We affirm the portion of the trial court's order denying plaintiff's motion to modify KT's custody and parenting time, but vacate the portions of the orders that (1) established CT's custody and parenting time, (2) ordered the children to attend Gibraltar schools, and (3) awarded defendant attorney fees and costs. We again remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

[4] On remand, the trial court may not consider its own erroneous rulings when awarding attorney fees since the court's errors are not attributable to conduct of the parties. See *Reed*, 265 Mich App at 164-165.